STATE OF IOWA v. WILLIAM ASHERT, *et al.*, Appellants. STATE OF IOWA v. THE SAVERY HOUSE HOTEL COMPANY, Appellant.

**Mulct Law:** CONSENT: COUNTY AUDITOR. While the statement of consent is to be filed with the county auditor, his filing it in no way determines its sufficiency or validity and does not preclude collateral attack upon it.

*Appeal from Polk District Court.*—HON. W. A. SPURRIER, JUDGE.

FRIDAY, MAY 31, 1895.

Action to enjoin the maintenance of a nuisance in the keeping and selling of intoxicating liquor. The petitions are in the usual form, showing that the defendants are engaged in selling, and keeping with intent to sell, intoxicating liquors, in violation of law, on certain lots in the city of Des Moines, with a prayer that injunctions issue to restrain their continuance.

The answer, in each case, is in two divisions, in the first of which there are admissions that the defendants are keeping and selling, on the premises described in the petitions, intoxicating liquors, but with denials that such acts are in violation of law. In the second division of the answers, it is shown that written statements of consent, purporting to have been signed by a majority of the voters residing in said city, who voted at the last preceding general election, as provided in section 20, chapter 62, Acts Twenty-fifth General Assembly, were filed with the auditor of Polk county, Iowa. The said divisions of the answers contain a further showing that a resolution of consent, for each of the said defendants, for such sales, was regularly adopted by the city council of the city of Des Moines, subsequently to the filing of said petition of consent, and the same was filed with the auditor of said county, and also that each of said defendants had filed with the county auditor a statement of consent, signed by all the resident freeholders owning property within fifty feet of the room or place where the sales were to be made, and also that a bond had been filed with said auditor as provided by such act. It further appears that the defendants have paid the tax provided for by the act. To the second division of the answer there was a demurrer, which the court sustained, and from the rulings the defendants appealed. —*Affirmed.*

*Cummins & Wright, Ed. T. Morris,* and *Gatch, Conner & Weaver* for appellants.

*J. J. Davis* and *W. G. Harvison* for the state.

Granger, J.—By a stipulation the same order is to be made in the two cases, and in our consideration we will speak alone with reference to the first-entitled case.

The question in this case is of general importance, and the appeal involves a construction of the laws passed by the last general assembly, somewhat changing the law for the suppression of intemperance. The demurrer is general, and hence it does not designate the particular as to which the answer is thought to be defective. The facts pleaded as to the filing of the statement of consent, the resolution of consent, the consent of freeholders, and the filing of the bond, are to comply with the provisions of chapter 62, Acts Twenty-fifth General Assembly. Before that act the law of the state was prohibitive of the sale of intoxicating liquors, except for specified purposes, and then by registered pharmacists only. The law, prior to the act in question, authorized both criminal and civil proceedings for its enforcement; the latter method being by injunction, in an equitable proceeding, and the imposition of severe penalties for disobedience. The penalties referred to are only imposed as a result of judicial inquiry and judgment. The act in question attempts to impose an assessment upon every person engaged in the selling, or keeping with intent to sell, intoxicating liquor, except pharmacists, and the following are the first two sections of the act:

"Section 1. There shall be assessed against every person, partnership, or corporation, other than registered pharmacists holding permits, engaged in selling or keeping with intent to sell, any intoxicating liquors, and upon any real property and the owner thereof, within or whereon intoxicating liquors are sold, or kept with intent to sell in this state, a tax of six hundred dollars per annum. All such taxes shall be a perpetual lien on all property both personal and real, used in or connected with the business.

"Sec. 2. It shall be the duty of the assessor of each township, incorporated town or city, in the months of December, March, June and September of each year,

to return to the auditor of each county a list of places with name or occupant or tenant, and owner or agent, where intoxicating liquors are sold, or kept for sale as herein contemplated, with a description of the real property wherein or whereon such traffic is conducted."

The sections following, to and including section 15, provide only for the levy and collection of the tax imposed by the sections quoted, and to what funds the tax shall be applied when collected.    The following is section 16 of the act:    "Nothing in this act contained, shall be in any way construed to mean that the business of the sale of intoxicating liquors is in any way legal-ized, nor is the same to be construed in any manner or form as a license, nor shall the assessment or payment of any tax for the sale of liquors as aforesaid, protect the wrongdoer from any penalty now provided by law, except that on conditions hereinafter provided certain penalties may be suspended."    If there be no other pro-visions of the act, its effect would be, clearly, to impose on the illegal traffic the burden of the tax thus imposed, without any relief whatever from the provisions of the prior law, as to penalties for its violation.    The city of Des Moines is one of more than five thousand inhabit-ants, and the act has provisions alone applicable to such cities.    The following is a part of section 17:    "In any city of five thousand or more inhabitants, the tax hereinbefore specified may be paid quarterly in advance on the first days of January, April, July, and October of each year, and after a written statement of consent signed by a majority of the voters residing in said city who voted at the last general election, shall have been filed with the county auditor, such payment shall upon the following conditions, be a bar to proceedings, under the statue prohibiting such business.    *First.*    The person appearing to pay the tax shall file with the county auditor, a certified copy of a resolution regu-larly adopted by the city council, consenting to such

sales, and a written statement of consent from all the
resident freeholders owning property within fifty feet
of the premises where said business is carried on.    But
in no case shall said business be conducted within three
hundred feet of any church or school house.   *Second.*
He shall file with the county auditor to be approved by
the clerk of the district court, a bond in the sum of three
thousand dollars conditioned upon the faithful observa-
tion of all provisions of this act, and for the payment of
any and all damages that may result from the sale of
intoxicating liquors upon the premises occupied by the
obligator.   Said bond shall be signed by himself as
principal and by two sureties who shall qualify each in
double the amount of bond, and neither of whom shall
be surety on any other like bond."   The other subdi-
visions of the section are as to the manner of selling,
and to whom sales may be made.   The answer assailed
by the demurrer is an attempt to plead the conditions
of section 17 so as to be "a bar to proceedings under the
statute prohibiting such business."   The con-
tention arises as to the duty of the auditor in
receiving and filing the statement of consent.   It
will be seen that the answer does not aver that the
statements of consent are signed by a majority of the
voters of the city of Des Moines, but that statements are
filed purporting to be so signed.   Appellant's claim is
that it is the duty of the auditor, before filing a state-
ment, to determine its sufficiency as such, and that
when filed the act becomes conclusive, and that defend-
ant need only plead the facts as they appear, and that
he is not required to plead and show the actual facts as
to the sufficiency of the statement; that is, that the
signatures are sufficient in numbers, and those of per-
sons qualified.   It seems to be the thought of appellant
that the act of the auditor is so far judicial that the
public is bound by it, when the other conditions of the

law are complied with. In argument it is said by appel-
lant: "Three questions are presented by the assign-
ment of errors: *First.* Did the county auditor have
authority to determine the validity or sufficiency of the
petition or statement of consent? *Second.* Was such
determination conclusive when assailed collaterally, no
fraud being alleged? *Third.* Were the official acts of
the public officers referred to, which are set forth in the
answer, presumptive evidence in the pending cases that
the act in question was in force in the city of Des Moines
from and after May 16, 1894?" The third proposition,
in its letter, is broader than the other two, by its refer-
ence to "public officers referred to" in the answer. The
argument upon the proposition is no broader, and makes
no claim that the statements of consent are in any sense
conclusive, or of *prima facie* validity, except in so far
as they are rendered so by the acts of the county auditor
with reference to them. Some language of the trial
court, and the manner of presenting the case here, has
led us to think that it is presented in this court with a
view only to determine the legal significance of the acts
of the county auditor,—that is, how far such acts are
conclusive as to the validity of such statements,—and
hence we limit our considerations to accord with that
view.

After a careful reading of the record and argu-
ments, we are not able to concur in the view that the
acts of the county auditor are in any way determinative
of the sufficiency or validity of the statements of con-
sent. It is true that in the auditor's office are the poll
books containing the names of the voters of the city at
the last preceding election, so that a comparison of
names could be made by the auditor; but both the state-
ments of consent and the poll books are public records,
and as accessible to others as to him for such purpose.
The law in no way enjoins upon the auditor a duty in
regard to such statements, except to file them. Such

an act, done upon such authority, has no judicial significance. It is a mere ministerial act, designed to place the instrument before the public so that notice may be taken of it, and acts done with reference to it, as the letter and spirit of the law will warrant. The law seems to contemplate that these statements shall be signed by those only who voted at the last general election in the city. The county auditor might be a person not a resident of the city, with no acquaintance or facilities whatever for knowing or determining the identity of the signers with the voters, except such as are afforded by the affidavits required to the statements, and the public records; and, as we have said, such facilities are as available to others as to him. We do not discover a reason why the auditor should be charged, because of a simple requirement to receive and file a paper in his office, with the duty of knowing that it is actually what it purports to be. Of course, he would not be justified in filing, as such a statement, what was manifestly, on its face, not one. In filing such a paper the officer is guided by the general rule to observe the instrument, and know that it conforms to the requirements of the law for filing, in so far as the face of the instrument will or should indicate the facts; but he is not required to make collateral inquiries to know that what appears on the face of the instrument is genuine, nor is he required to go beyond what he may be legally presumed to know as to the facts essential to render the instrument valid, such as that the number of names on the statements is equal to the number required by the law as signers. If the statements appear to be properly signed, the filing is warranted.

Appellant attaches much importance to the rulings of this court in cases where the city council and the trustees of incorporated towns and of townships are authorized, upon the presentation of petitions signed

by one-third of the resident taxpayers, to order an election to vote aid to the construction of railways. This court has held that when a petition is presented in such a case, and the council or trustees have passed upon the sufficiency of it, and ordered the election, and the tax has been voted and levied, the validity of the tax cannot be assailed on the ground that the petition was not properly signed. Substantially the same rule has been applied to the action of a board of supervisors in passing upon the sufficiency of a petition for an order calling an election to vote on the question of relocating a county seat. The action of the board has been held conclusive as to the sufficiency of such a petition. See *Ryan v. Varga,* 37 Iowa, 78; *Luce v. Fensler,* 85 Iowa, 596 [52 N. W. Rep. 317]; *Baker v. Board,* 40 Iowa, 226; *Herrick v. Carpenter,* 54 Iowa, 340 [6 N. W. Rep. 574]. The law as to voting aid to railroads, under which the holding was made, provides that "whenever a petition shall be presented to the council or the trustees * * * signed by one-third of the resident taxpayers * * * asking that the question of aiding in the construction of any railroad be submitted to the voters thereof, it shall be the duty of the trustees or council * * * to immediately give notice of a special election," etc. The law does not, in terms, require the council or trustees to determine the question of the sufficiency of such petition. But such a duty devolves on them by a clear implication of the law. The law provides that the petition in such case shall be presented to the trustees or council for its action in pursuance of it. It is required to act upon certain conditions, and manifestly it should inquire whether or not the conditions exist, before acting. No other provision is made for the determination of such a question. These same considerations apply to the action of a board of supervisors in determining the sufficiency of petitions asking a vote on questions of relo-

cating county seats. These petitions are presented to such boards as a basis for their action, if the petitions are sufficient. Such petitions have no other purpose than to invoke such action, and they are addressed to such tribunals. These statements of consent are no more to the auditor than to any other county officer, except that he is to file and preserve them as public documents. By a provision of the act in question, the consent to sell granted by the resolution of the city council may be withdrawn by a petition signed by a majority of the legal voters of the city who voted at the last general election. The query is presented, if a petition withdrawing consent is filed, whose duty is it to determine its sufficiency? This query is presented in support of appellant's claim, and we should exercise care not to determine questions in advance of submission, but we may say that we do not now see that it would devolve such a duty upon the auditor. It is said by appellant, in argument: "If a petition of that character is filed with the auditor, may he refuse to examine it, disregard it, and go on listing property for taxation, approving bonds, and otherwise executing the provisions of chapter 62?" This query with other remarks in argument, indicate to us that the appellant's view is that the statement of consent operates to relieve parties who have complied with the conditions of section 17 from the payment of the tax. This is a misapprehension of the terms of the law. Nothing excuses a seller from the payment of the tax. The observance of the provisions of section 17 only operates as a bar to prosecutions under the provisions of prior laws; and, when a petition of withdrawal of consent is filed with the auditor, we do not see that his duties are changed because of it. He is not charged with the enforcement of the prohibitory law, nor is it his duty to approve bonds, under the provisions of the act we are considering. Bonds that are to be approved are to be filed with

him, in compliance with section 17, but he has no other duty in regard to them. Nor do we see, from a careful reading of chapter 62, that the auditor is charged with any duty in executing its provisions, except as to the collection of taxes, and that duty has no reference to the issues of this case, for it is the same regardless of statements filed.

We concur in the conclusion that the act of the auditor in filing the statements of consent has no significance, as bearing on their sufficiency. As to what effect should be given to the statements when filed in full conformity to the law, or to the acts of others who have duties to perform, or may have, in pursuance of them, we neither consider nor determine. This conclusion accords with the action of the district court, and its judgment is *affirmed*.

Kinne, J.—I concur in the foregoing opinion, but do not wish to be understood as in any manner recognizing the constitutionality of so much of the law as is therein considered.