LOOMIS, Trustee, Plaintiff and Appellant, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Defendant and Appellant.

(141 N. W. 386.)

1. **Municipal Corporation—Local Improvements—Assessments—Description of Property.**

The test of sufficiency of description of realty in an assessment for a sewer is, whether one acquainted with surveying can find and identify the property from the description given without aid of further descriptive evidence; and, **held,** that a description of C. & N. W. Railway Company "right of way and railway lands west side of E. street" in city of R., is not a sufficiently definite description for a valid assessment; it appearing that the railway company has other railway lands than right of way in said city, and said description not indicating whether such "railway lands" are platted or unplatted.

Gates, J., concurring specially.

2. **Assessment Certificates—Payment by City—Trustee in Lien Foreclosure—Party in Interest.**

One to whom certificates of assessment issued by a city under Laws 1903, Ch. 213, are assigned in trust for a bank, does not by reason of the city paying them and he continuing in their possession, become trustee for the city, so as to empower him to sue as trustee for the city, in foreclosure of the lien of the certificate, he not being the real party in interest.

(Opinion filed May 6, 1913.)

Appeal from Circuit Court, Spink County. Hon. ALVA E. TAYLOR, Judge.

Action by S. Loomis, trustee, against the Chicago & Northwestern Railway Company, to foreclose upon certain street sewer certificates. From findings and judgment in favor of defendant on the first cause of action, plaintiff appeals; and from findings and judgment in favor of plaintiff on the other causes of action, defendant appeals. Reversed on defendant's appeal; affirmed on plaintiff's appeal.

*A. K. Gardner,* and *W. F. Bruell,* for Defendant and Appellant.

The resolution declaring the improvement necessary did not sufficiently describe the improvement, and was insufficient to confer jurisdiction, and subsequent proceedings of the city council were fatally defective. (Assignment of error I, 3, 4, 10, 11, 12, 13,

18, 19, 26 and 27) ; (Assignment of error II. 9, 11, 12, 13, 18, 19, 26, 27, 28, 29, 30 and 31). Sec. 6 & 11, Ch. 213, Session Laws 1903; Section 1303, Revised Political Code; Whittaker v. Deadwood, 23 S. D. 538; Mason v. Sioux Falls, 2 S. D. 640; McLauren v. Grand Forks, (Dak.) 43 N. W. 710; Bennett v. Emmettsburg, (Ia.) 115 N. W. 582; Johnston v. Oshkosh, 21 Wis. 186; Cal. Imp. Co. v. Moran, (Cal.) 60 Pac. 969; Bay Rock v. Bell, (Cal.) 65 Pac. 299; Holden v. Chicago, (Ill.) 50 N. E. 118; Otis v. Chicago, (Ill.) 43 N. E. 715; Cass v. People, (Ill.) 46 N. E. 729; People v. Hurford, (Ill.) 47 N. E. 368; Lambert v. Cummings, (Cal.) 84 Pac. 266; Schweisau v. Mahon, (Cal.) 60 Pac. 683; Fay v. Reid, (Cal.) 60 Pac. 927; Davison v. Chicago, (Ill.) 53 N. E. 367; Gardner v. Chicago, (Ill.) 79 N. E. 624; Lindblad v. Normal, (Ill.) 79 N. E. 675.

It should be noted in passing that section 6 of chapter 213 confers jurisdiction upon the city council, after the adoption of a resolution declaring the necessity therefor, to make "the improvements therein specified," clearly contemplating that this resolution shall, in fact, specify the character of the improvements. In this respect, the present statute is more explicit than section 1303 of the Political Code considered in Whittaker v. City of Deadwood.

Notwithstanding the invalidity and insufficiency of this preliminary prerequisite to a special assessment, it appears that the council next proceeded to let a contract for the construction of the sewer, and, presumably in compliance with section 11 of the act, the city engineer, city attorney and city auditor made an alleged estimate for special assessment.

The same section (11') of the statute requires, among other things, that the estimate for special assessment shall contain "the full description, together with the owner's name, of each lot, part of lot and parcel of land, etc." The property sought to be reached by the second and third causes of action is described in this estimate as follows :

| Description of Lot. | Owners name | Feet frontage | Amt. assessed |
|---|---|---|---|
| Chicago & Northwestern Railway Co., Right of Way and railway lands west side of Emerson St. . . . . . . . . . . . | C. & N. W. R. R. Co. | 695 | $648.57.5 |
| Chicago & Northwestern Railway Co., Right of Way and railway lands west side of Emerson St. . . . . . . . . . . . | C. & N. W. R. R. Co. | 570 | 561.45 |

This description, if it can be so designated, is followed practically verbatim in the so-called assessment ordinance.

The attempted assessment of defendant's right of way is void, because not sufficiently described, and not limited to one hundred and fifty feet in depth. (Assignment of Error I. 1, 9, 10, 11, 12, 13, 14, 17, 24, 26, 27); (Assignment of error II. 6, 7, 8, 9, 11, 12, 13, 14, 17, 18, 26, 27, 28, 29, 30, 31); Secs. 11 and 24, Ch. 213, Sess. Laws 1903; Grand Forks v. Fredericks, (N. D.) 112 N. W. 840; Becker v. Ry. Co., (Ind.) 46 N. E. 685.

A glance at the description of the property attempted to be subjected to special assessment lien by the second and third causes of action discloses a most remarkable description. The assessors' estimate for assessment and the assessment roll ordinance contain practically the same description. Referring to the assessment roll ordinance, it will be observed that the property sought to be subjected to special assessment by the second cause of action is described as follows:

"Chicago & Northwestern Railway Company Right of Way and railroad lands, west side of Emerson street."

And the property sought to be subjected to special assessment by the third cause of action is described as follows:

"Chicago & Northwestern Railway Company Right of Way and railroad lands, east side of Emerson street."

The description found in the certificates forming the basis of this action is quite as meager and indefinite. We presume all that

part of the right of way lying west of Emerson street and extending to the city of Gettysburg in Potter county might properly be said to be included in this description. It might also be claimed that the property described in the third cause of action includes all that portion of the right of way lying east of Emerson street, whether within the confines of South Dakota, Minnesota or Wisconsin. The description itself is meaningless, and no decree describing the property as described in these assessment proceedings could possibly be enforced, nor could the property be located therefrom. The resolution passed by the city council August 5, 1907 (Abst. 323-327), provides that the "contract cost shall be paid by assessment interest-bearing certificates against the property adjoining such sewer and to be benefited thereby." The certificates themselves purport to be against the land of the defendant, "which said land lies east of and abuts upon the sewer which has been constructed." It will thus be observed that it is proposed to be taken in this proceeding, not only lands lying east and west of Emerson street, without limit as to its depth in either direction therefrom, but the street itself is included, as the certificates and resolution recite that the land adjoins the sewer, and not the street. Section 24 of chapter 213, supra, provides that "unplatted lands shall be assessed to a depth of one hundred and fifty feet from the street line upon which the assessment is calculated." Confessedly, there must have been a valid assessment in a proceeding of this character before any recovery can be had, and this statute is clearly mandatory.

In Reply.

The nature of plaintiff's cause of action.

It is provided by this act that the city may at its option "require the contractor to receive as payment for so much of the work as shall be assessed against the lots benefited interest-bearing certificates of assessment against such lots respectively." (Sec. 8.) In this case, the city exercised this option, and presumably, had no further interest in the matter of the payment of these special assessments after the issuance of the certificates. It is suggested that this special assessment appears upon the assessment books as a tax, but, if this be true, clearly it had no business there, nor has the municipality any further interest in the matter. Confessedly, the city might have paid its contractor and have had the special

assessment certified against the property, but if this had been done, certainly an action in equity could not have been maintained to enforce collection, but it would then have been incumbent upon the municipality to collect in the usual manner of collecting taxes. Both methods could not be pursued, and the plaintiff is surely not in position now to suggest, after bringing an action on the certificates and after having accepted them as payment, that he is acting as trustee of the city, and hence, entitled to collect this assessment as a tax appearing upon the tax records.

It is apparently now contended that the plaintiff is a trustee of a resulting trust in favor of the city. This action, however, is based upon assessment certificates, and does not purport to be an action such as is suggested by counsel, even if one could be maintained. But, in addition to this, it should be observed that if the contractor negotiated these certificates to the plaintiff or his bank, the one upon which the first cause of action is based was paid. A special assessment does not constitute a personal obligation of the owner of the property assessed, and whenever the amount of the assessment is paid, the lien is discharged. It follows that it is immaterial by whom the assessment may have been paid, as the lien cannot be sustained where the assessment alleged to have been a charge against the property has been paid. It is held by this court in City of Brookings v. Natwick, 22 S. D. 322, that a special assessment for sidewalks against abutting property cannot be enforced against the owners as a personal claim, but only against the property, if at all. The evidence in this case showing without contradiction that the certificate mentioned in the first cause of action was fully paid before the commencement of the action, an action could not be maintained to foreclose the lien of such certificate. State v. City of Elizabeth, (N. J.) 18 Atl. 302; Hudson v. People, (Ill.) 58 N. E. 964; Mason v. City of Chicago, 48 Ill. 420; Delaney v. Gault, 30 Pa. St. 63.

*Sterling & Clark,* and *Edmund W. Fiske,* for Respondent.

Chapter 213 of the Session Laws of 1903 gives general directions as to the steps required for the construction of a sewer, and provides for the giving of ample notice to all persons interested. Paragraph six of the act specifies what the resolution must contain. It provides (among other things) that the resolution shall declare the necessity for the sewer. And however strictly this sec-

tion may be construed, it will be seen that every requirement has be complied with.

The description of the property.

The statute provides that "unplatted lands shall be assessed to a depth of one hundred fifty (150) feet from the street line upon which the assessment is calculated.". Section 24 of Chapter 213, Laws of 1903.

The lands of the defendant corporation were unplatted; consequently, they were liable to an assessment and to a sale of the property to the depth of 150 feet. The certificates of assessment do not specify the 150 feet in depth, but certainly the lien is limited to that amount of land by virtue of the statute. We grant that certificate of assessment would have been more complete had it quoted the words of the statute. But the certificate of assessment is not the assessment in fact. It is an instrument only indicating that an assessment has been had. The assessment is by front foot. In the case of lots, it would not matter whether the lots were 400 feet in depth or only 10 feet in depth. The cost of the sewer would be the same per front foot. And in the case of unplatted lands, it matters not whether such lands are 10 feet in depth or ten miles. The assessment per front foot would be the same. The assessment is per front foot, and the cost to the owner is not governed in the slightest degree by the depth of the lot or unplatted piece of land. Therefore, no prejudice could possibly result to the defendant by the omission of the words "to a depth of 150 feet." If the unplatted ground had been only ten feet in depth, it would have been subject to the same assessment. The charge would have been no greater and no less. The depth of the unplatted lands becomes material only when it comes to a sale for the assessment. And the limitation of 150 feet is a protection to the owner in that it prevents any greater amount of land being sold to satisfy the lien. The sewer ran across the entire property of the defendant on Emerson street; none of its property was assessed except such as fronted on the sewer.

Applying the rule laid down by this court in the case of Stoddard v. Lyon, 18 S. D. 207, the irregularity of description is not sufficient to invalidate the assessment, because "the description is sufficient to identify the land and give notice to the owner of its

assessment," and "it is not so defective that it might probably mislead the owner."

The defendant contends that the assessment is defective, first, because it is not recited that the unplatted lands are assessed to a depth of 150 feet only; and second, because it is not recited that the line starts from the edge of the street. It seems to us that this is a mere quibble, if we are to reply upon the doctrine established in Stoddard v. Lyon. It clearly appears from the evidence that this certificate of assessment had been assigned by A. I. Olding to A. Loomis, as Trustee. At the time of this assignment, Loomis was acting as Trustee for the Merchants Bank of Redfield. But it is immaterial in this action for whom' he was acting as trustee. He sued in a representative capacity and it was not necessary for the trust to be disclosed. It will appear that, as to this certificate of assessment for $351.05; plaintiff acted first as trustee for the Merchants Bank of Redfield, and later as a trustee for the City of Redfield.

The certificate of assessment was never assigned by Loomis to the City of Redfield (Folio 92, abstract). The city paid to the Merchants Bank of Redfield (through Loomis, its trustee) the amount of money represented by the certificate with interest. It is our contention that a resulting trust ensued whereby the City of Redfield became subrogated to the rights of the Merchants Bank of Redfield, and that Loomis, by operation of law, became trustee for the City of Redfield. Therefore, at the time this action was brought, the City of Redfield was entitled to the rights and benefits under the certificate of assessment, but with Loomis bringing the action as holder of the certificate and as its trustee.

It is undisputed that this tax has never been paid by the defendant, or by anyone for it. Olding received pay, for his work as contractor, when he received the money for the assignment of all certificates from the Merchants Bank of Redfield. And the Merchants Bank received its pay for this particular certificate when the time-warrant was paid. But it clearly appears that the city issued this time-warrant as an assurance only to the contractor and his assigns that if the property owner did not pay the tax within a reasonable time, then that the city would protect the contractor and his assigns against such default.

·Olding received pay for all of the certificates but this did not relieve the defendant company from its liability, for the payee became subrogated ʌto all the rights of Olding, including his right to enforce payment by sale of the property. In like manner, the payment by the city of the amount due on one of the certificates did not. establish the fact that such payment was a cancellation of the indebtedness, nor release of the lien. It did nothing more than to establish the fact that the ·City of Redfield became subrogated to the rights of the former beneficiary. Loomis, acting solely as trustee, had the right to enforce. payment on this certificate for the benefit of the City of Redfield. And this is what he was trying to do in this action as to that particular certificate.

The court found that the time-warrant was issued as security only (Folio 461, abstract), and that the certificate of assessment is still held by the plaintiff herein as trustee (Folio 467, abstract). And yet in the face of these findings of fact, the lower court made its conclusion of law that this tax had been paid.

We respectfully maintain that the court was in error as to the effect of the payment of the city warrant by the City of Redfield; and that the court was in error in ·denying plaintiff's motion for a new trial as to its first cause of action; and that this court should reverse. the decision of the lower court as to this certificate for $351.05.

McCOY, J. There are two appeals in this case; one by plaintiff and one by defendant. During the year 1907 the city of Redfield constructed a sewerage and sanitary drainage system, and assessed the cost thereof against abutting property in proportion to the number of feet fronting on either side of such sewer. The defendant owns certain grounds, used principally for depot, warehouse, track yards, and main line roadbed purposes, which is crossed by a portion of this sewer system. The said property of defendant was attempted to be specially assessed to pay its proportionate front foot share of the cost of the construction of said sewer. The defendant not having paid said assessment, and not having entered into a contract to pay the same in installments, the city authorities of Redfield issued interest-bearing certificates of assessment under the provisions of chapter 213, Laws of 1903, for the respective amounts assessed against the several parcels of said grounds of defendant abutting and fronting on said sewer,

and which certificates of assessment against the property, of defendant were issued to one Olding, the contractor who constructed said sewer, and thereafter the said Olding assigned said certificates to plaintiff as trustee for the Merchants' Bank. Plaintiff brings this action to foreclose the statutory lien, claimed to exist by virtue of the law, against said property of defendant on account of said special assessments.

There were three certificates issued to said Olding, and assigned to plaintiff against the said property of defendant, each of which is made to constitute a separate cause of action by plaintiff's complaint, seeking to foreclose the lien thereof against the said property of defendant. The certificate of assessment mentioned in the first cause of action is in substance as follows: "I hereby certify that the sum of $351.05 has been levied and assessed by the city of Redfield against lot—west 60 feet of lot 11, and lots 12, 13, 14, and 15 of warehouse lots C. & N. W. R. R. Company, which said lots abut upon the street or streets in which said sewer has been constructed from the intersection of Humboldt avenue and Pope St. to the intersection of Pope and Emerson Sts. thence north one-half block along Emerson St. and that such assessment has been duly certified to the county auditor of Spink county for the purpose of collection, and that this certificate is a lien upon such lot and may be foreclosed as provided by law and that the same is hereby issued to A. G. Olding, the contractor for the construction of said sewer, and the treasurer of the city of Redfield is hereby authorized and directed upon the presumption and surrender of this certificate to pay to said Olding, his heirs or assignees the said sum of $351.05 with interest at 6 per cent. per annum, which certificate is under the hand and seal of the city auditor of Redfield." The certificates mentioned in the second and third causes of action are the same as in the first, with the exception that the certificate mentioned in the second cause of action recites that it is for $555.84 assessed against land of the Chicago & Northwestern Railroad Company in the city of Redfield, which said land lies east of and abuts upon said sewer which has been constructed from the intersection of Pope and Emerson streets south across the Chicago & Northwestern Railroad land to the alley between said railroad land and Oregon avenue, University addition to Redfield; and the certificate mentioned in the third

cause of action recites that it is for $677.62 assessed against land of the Chicago & Northwestern Railroad Company, which land lies west of and abuts upon said sewer from the intersection of Pope and Emerson streets south across the Chicago & Northwestern Railroad land to the alley between said railroad land and Oregon avenue, University addition to Redfield.

Defendant denied generally that any lawful procedure was had to establish said sewer system, denied that plaintiff is the owner of said certificates, and alleged that long prior to the commencement of this action the city of Redfield paid to said Olding the several amounts with interest mentioned in said certificates, thereby redeeming and satisfying the same, denies that defendant has or ever will receive any benefits whatever from the construction of said sewer, but that the same is a damage to the property of defendant, and was only constructed abutting to and across the property of defendant for the purpose of obtaining an outlet for such sewer. The defendant admitted that it is the owner of the real estate mentioned and described in the complaint.

The trial court made findings of fact and conclusions of law in favor of defendant upon the first cause of action set out in plaintiff's complaint, from which findings plaintiff appeals. The court made findings and entered judgment in favor of plaintiff upon the second and third causes of action, set forth in plaintiff's complaint, from which findings and judgment defendant appeals, assigning various errors and the insufficiency of the evidence to justify such findings. We will first consider the appeal taken by defendant.

[1] The appellant, among other things, contends that the attempted assessment of appellant's right of way is void, because not sufficiently described, and not limited to one hundred fifty feet in depth. The assessment roll ordinance, fixing the amount levied and describing the land against which the same were levied, describes the lands covered by the certificates mentioned in the second and third causes of action mentioned in plaintiff's complaint substantially as follows: Against the property in the city of Redfield, S. D., abutting on Emerson street, in which said sewer is being, has been, or is about to be, constructed in the sum and against the particular lots or parcels of land with the owner's

27—Vol. 31, S. D.

name as follows:    Chicago & Northwestern Railway Company right of way and railway lands west side of Emerson street, Chicago & Northwestern Railway Co., $677.62; Chicago & Northwestern Railway Company right of way and railway lands east side of Emerson street, Chicago & Northwestern Railway Company, $555.84. We are of the opinion that these descriptions are not sufficiently definite and certain. If these descriptions were limited solely to right of way, we might be inclined to the view that they were sufficient. It seems to be generally held that a description which informs the person to be assessed with reasonable certainty as to what property is intended to be included within such assessment is sufficient, and that what would be sufficient description in a deed of conveyance would also be sufficient in a special assessment levy. The test of sufficiency seems to be that if a person acquainted with surveying could find and identify the property from the description given without the aid of any further descriptive evidence. We are inclined to the view that a deed describing the property as the right of way of the Chicago & Northwestern Railway Company on the east side of Emerson street in the city of Redfield, S. D., would be sufficient. The statute limiting the depth of special assessment to 150 feet from the abutting street line, of which statute appellant was bound to know, would be taken into consideration in identifying the land covered by special assessment. Such statute is a legal monument specifying the extent of special assessment districts. As applied to the right of way alone, the descriptions given definitely notified defendant of the location of the frontage of the street line, and the statute, of which he was bound to know, informed him of the depth of the assessment. In the absence of such a statute, if the description in question, as a matter of fact, as claimed by defendant, contained no outside terminals, but was left open without any description as to either end, it, of course, would be held indefinite. There are many cases so holding. Cleveland, C., C. & St. L. Ry. v. O'Brien, 24 Ind. App. 547, 57 N. E. 47. Some of these cases specifically state that there is no method furnished by statute for limiting the depth of the assessment. Diggins v. Hartshorne, 108 Cal. 154, 41 Pac. 283. Some statutes provide that the assessment shall extend to the center of the block, and under such statutes, when the improvement runs lengthwise of the

lots, it is held that the assessment-extends to the center of the block, and that it is a matter of surveying to ascertain the center of the block and extent of assessment. But in this case the outside terminals of the right of way are not left open and indefinite. The description confines the right of way to the city of Redfield, and the outside terminals would only extend to the city limits. As to right of way, the description is complete as to outside terminals just as much so as the description mentioned in South Chicago Ry. Co. v. Chicago, 196 Ill. 490, 63 N. E. 1046. The right of way description is within the rule that that is certain which can be made certain. The description given furnishes the means of identification. Ford v. Ford, 24 S. D. 644, 124 N. W. 1108. From the description thus given without the aid of any other descriptive evidence, a surveyor could identify the amount of right of way covered by such assessment. It seems to be generally held that when part of a tract, the whole of which is correctly described, is subject to special assessment, and within the assessment district, a levy on the entire tract will not invalidate the levy. 28 Cyc. 1150. The special assessment will only extend to the limits of the taxing district. This is the precise situation in this case with reference to the right of way description. A larger extent of rght of way is described than is included in the special assessment district.

The nearest approach in principle to the question here involved we have been able to discover is in the case of Voris v. Pittsburg Plate Glass Co., 163 Ind. 599, 70 N. E. 249. An Indiana statute provides that platted and unplatted lands shall be subject to special assessment within 150 feet of the fronting street line, and that the first 50 feet next to the street line shall be primarily liable for the assessment, and that secondary liability shall attach between the outside of the first 50-foot limit and the outside of the 150-foot limit. In construing this statute the court said that owners of back lots, extending beyond the first 50-foot limit, and beyond the 150-foot limit, were bound to know the law, and were bound to know what part of their lands were within the limits of the taxing district to the extent indicated by he law. As applied to the case at bar, the outside limits of the taxing district for the construction of the sewer in question at the place where the same crossed appellant's right of way was 150 feet

either way from the fronting street line on either side of Emerson street. This limit was fixed by the statute of which appellant was bound to know.

It will be observed that the descriptions given specify "right of way and railway lands." The evidence shows that appellant has other railway lands in the city of Redfield than right of way. There is nothing in this description to indicate whether such "railway lands" are platted or unplatted, and herein enters a matter of much indefiniteness and uncertainty. From the evidence preserved in the record, it appears that on the east side of Emerson street and abutting on said improvement and within said special assessment district appellant owns other land not included in its right of way. The special assessment is in a lump sum against the right of way and "railway lands." What the extent of this other "railway land" is, or how much of such assessment is chargeable thereto, is not made known. On the west side of Emerson street there are other lands fronting on the street line, he ownership of which is not shown. It may or may not be railway land, not right of way. The description of the west side includes "railway land" in addition to right of way. How much is not shown. The special assessment for the west side is in a lump sum. From the descriptions given it would not be possible for an expert surveyor to identify the "railway land" included in these descriptions or separate the same from the "right of way."

[2] The trial court found in relation to the first cause of action that the certificate of assessment was paid by the city of Redfield, and that said certificate was still in the hands of plaintiff, but that plaintiff is not entitled to recover on such certificate. From this finding and conclusion plaintiff appeals, contending that plaintiff after such payment became the trustee of the city of Redfield, instead of trustee for the bank, that the effect of such payment by the city of Redfield was only to change the beneficiary of plaintiff's trusteeship without affecting the trust, and that plaintiff should have been permitted to maintain this action as trustee for the city of Redfield. We are of the opinion that this contention of plaintiff is not well founded; that, although the plaintiff is in possession of said certificate, his possession is bare naked possession or custodian without any legal rights attaching to such possession. If this certificate in the first instance had been assigned direct to the bank,

instead of to plaintiff as trustee, and said payment made to the bank as it was, and the bank after such payment had retained possession of said certificate, still the bank, under such circumstances, would not have then had sufficient interest therein to entitle it to maintain a suit on the certificate as the real party in interest. Upon the question as to whether or not there was in fact such a payment of said certificate as would cancel and fully satisfy the same as against the city of Redfield, we express no opinion. The opinion of this branch of the case is based solely on the ground that plaintiff cannot maintain the first cause of action set out in the complaint because plaintiff is not the real party in interest.

The judgment and order appealed from by the defendant appellant are reversed.

The findings and conclusions appealed from by plaintiff are affirmed.

GATES, J. (concurring specially). I concur in the result announced in the foregoing opinion, but I am unable to agree with the views expressed in regard to what might have been the result had the property sought to be assessed been limited to the right of way of the defendant. I consider the assessments specified in the second and third causes of action to be void for indefiniteness of description, and that they would have been no less void had the words "and railway lands" been omitted. Section 11, c. 213, Laws of 1903, requires that the estimate for special assessment shall among other things contain: "4. The full description together with the owners' name, of each lot, part of lot and parcel of land, and the number of feet of frontage of the same after deductions made, bordering upon the street or streets in which such sewer or sewers are to be constructed." This estimate is published in the official newspaper, and constitutes the basis for the assessment and all subsequent proceedings. The description in the engineer's estimate in the third cause of action (which differs from that in the second cause of action only as to the side of the street), after showing that the property is situated in Redfield, is as follows:

| Description of Lot | Owner | Feet Front-age | Amount Esti-mated |
|---|---|---|---|
| Chicago & Northwestern Railway Co., right of way and railway lands west side of Emerson street ..................... | C. & N. W. R. R. Co. | 570 | $561.45. |

It seems to me that this description would be precisely as indefinite if the words "and railway lands" were omitted. The only definite things about it are that the land lies within the city limits of Redfield, that it is on the west side of Emerson street, and that it has a frontage of 570 feet. How could a surveyor from these facts alone definitely locate the property? It seems to me that the description with the words "and railway lands" omitted is no more definite than if it reads "lands of John Smith, west side of Emerson street," or "right of way of John Smith, west side of Emerson street." I cannot subscribe to the proposition that a description which might be good as between the parties in a deed or contract is necessarily good in proceedings by which land may be taken from its owner by legal machinery.

Again, even if the right of way were capable of being located from the assessment, the description is indefinite, because it contains no western boundary. To sustain this the opinion states that the statute is a legal monument, specifying the extent of the special assessment districts. The statute (section 24, c. 213, Laws of 1903) is as follows: "The term 'lot' as used in this act shall be deemed to be any tract of land described as a lot in the recorded plat of the city or any addition or subdivision thereof. Any block of land not subdivided into lots or in ownership shall be assessed for sewerage purposes to the center line thereof from the front upon which the assessment is calculated. Unplatted lands shall be assessed to a depth of one hundred and fifty feet, from the street line upon which the assessment is calculated. Provided, that if the owner of the frontage own less than one hundred and fifty feet in depth, the assessment shall cover no more than the land belonging to the owner of such frontage."

It will be observed that, in case of a platted lot bordering upon the street, the whole lot is to be assessed, be it more or less than 150 feet in extent from the street line. In the case of a platted block owned by one person, the assessment is to extend to the center of the block, be it more or less than 150 feet from the street line. In case a platted block is owned by different persons, the tract abutting on the street is to be assessed, be it more or less than 150 feet in extent from the street line, or be it more or less in extent than to the center of the block. In the case of unplatted lands, the tract assessed would extend 150 feet from the street line if the abutting owner owned so far. If he did not, it would only extend to the boundary of his ownership. The extent of the property to be assessed depends, therefore, not only on the facts in regard to the platting of the property adjacent to the street, but also upon extrinsic facts in regard to ownership not shown in any map or plat and which may or may not be shown by the records in the register of deeds' office. I cannot accede to the implied inference in the opinion that a railroad right of way in a municipality is presumptively unplatted land.

In support of my view that the assessment would have been void if the words "and railway lands" had been omitted, I cite the following authorities: Hamilton on Special Assessments, § 539; Elliott on Roads and Streets (3d Ed.) § 743; 28 Cyc. 1164; Labs v. Cooper, 107 Cal. 656, 40 Pac. 1042; Upton v. People, 176 Ill. 632, 52 N. E. 358; C., C., C. & St. L. Ry. Co. v. O'Brien, 24 Ind. App. 547, 57 N. E. 47; Paine v. Germantown Trust Co., 136 Fed. 527, 69 C. C. A. 303; Pennsylvania Co. v. Cole (C. C.) 132 Fed. 668; L. & N. Ry. Co. v. East St. L., 134 Ill. 656, 25 N. E. 962; Becker v. Railway Co., 17 Ind. App. 324, 46 N. E. 685. It is my opinion that section 24 of the Sewerage Act was not intended by the legislature to be referred to in determining what property actually was assessed, but that said section was intended by the Legislature to be a mandatory direction to the assessing officers as to what property they should assess after making the proper investigation as to whether the land was platted or unplatted, and as to ownership.

In the case of Poindexter v. Doolittle, 54 Iowa, 52, 6 N. W. 136, a tax deed recited that the purchaser at tax sale paid the taxes on a certain 40-acre tract for 14 acres, and 14 acres of said

40-acre tract were deeded to him. The description was held void for uncertainty. The statute provided that in such case the purchaser should be deemed to be the owner of the undivided 14-40 of the tract, but the court refused to call such statute to its aid in interpreting the deed and refused to read the statute into the deed. It said: "The description in the deed designed to constitute the foundation of a title for all time, should be sufficient by its own terms." See, also, Griffith v. Utley, 76 Iowa, 292, 41 N. W. 21; and Smith v. Blackiston, 82 Iowa, 240, 47 N. W. 1075. The Indiana case mentioned in the opinion is, according to my view, inapplicable. There the engineer in his report was only required to describe the property bordering upon the street. The secondary liability of the interior property for payment of part of the assessment rested upon the fact that a definite boundary 150 feet from the street line had been fixed by previous steps taken of which the interior owner was presumed to have notice by the publication required by the statute.

The description in the estimate for special assessment being void for indefiniteness, the later steps taken in the proceeding were ineffectual to constitute a valid assessment.