# MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, a Corporation, Respondent, v. CITY OF MINOT, et al. Appellants.

(37 A.L.R. 211, 199 N. W. 875.)

Municipal corporations — railroad right of way assessable to the extent of special benefits; property may not be subjected to special assessments for benefits merely speculative or conjectural; special segregated assessment district embracing territory charged with burden of improvement must be created by municipal legislative authority: special assessment levied subsequent to failure to create special district invalid; cause may be remanded for additional evidence.

In an action brought to set aside certain special assessments against the right of way of the plaintiff railroad company, it is *held:*

---

Note.—Liability of railroad property to assessment for local improvements, see notes in 28 L.R.A. 249; 12 L.R.A.(N.S.) 112; 40 L.R.A.(N.S.) 935; L.R.A.1915A, 129; 37 A.L.R. 219; 25 R. C. L. pp. 117, 119; 4 R. C. L. Supp. 1571.

(1) The right of way of a railroad company may be specially assessed for public improvements, including water mains and sanitary sewers, under § 3726, Comp. Laws 1913 to the extent that it will be especially benefited by the construction of the work. (The expression in Northern P. R. Co. v. Richland County, 28 N. D. 172, to the contrary, overruled.)

(2) Property may not be subjected to special assessments under § 3726, Comp. Laws 1913 for benefits that are merely speculative or conjectural.

(3) Certain sections of article 20 of chapter 44 of the Political Code construed and held to require, as a preliminary jurisdictional step in providing for the construction of public improvements to be paid for by special assessment, that a special assessment district be created by the legislative authority of a city, which district shall embrace the territory to be charged with the burden of the improvement, segregated from that not to be so charged.

(4) Where the city commission proceeded with the extension of a water main and a sanitary sewer with a view to serving and affecting thereby certain limited territory, and where it neglected to create special assessment districts as required by §§ 3698, 3699 and 3701, Comp. Laws 1913, the assessment subsequently levied by the special assessment commission is invalid. Kvello v. Lisbon, 38 N. D. 71.

(5) Where the plaintiff by its pleading offers to pay an equitable tax to be determined by the court and where the evidence in the record does not afford a sufficient basis for the making of an equitable assessment, the cause may properly be remanded for the taking of additional evidence on the question of benefits; conditioned, however, upon the defendants' right to elect to proceed with the creation of assessment districts and the levying of assessments in the regular manner.


Opinion filed January 5, 1924.   Rehearing denied July 28, 1924.


Municipal Corporations, 28 Cyc. p. 1102 n. 12; p. 1103 n. 18; p. 1119 n. 82; p. 1122 n. 15; p. 1128 n. 84; p. 1129 n. 94; p. 1191 n. 76.


Appeal from the District Court of Ward County, *Lowe,* J.
Reversed and remanded.

*J. J. Coyle,* and *Fisk, Murphy & Nash,* for appellant.

The exact method adopted by the council in apportioning the cost of paving the intersection and alley in Third street against the property charged therewith is not shown by the record, but, presumptively, the statute was followed and the assessments not in excess of the actual benefits conferred. Carpenter v. Hamburg, 179 Iowa, 1168, 182 N. W. 602.

In the absence of a showing to the contrary, the presumption that the statute was followed in making same, and that the assessment is equitable and just will prevail. Dickinson v. Guthrie Center, 170 N. W. 760.

The burden rested upon appellant to overcome this presumption. Chicago R. I. & P. R. Co. v. Centerville, 172 Iowa, 444, 153 N. W. 106, 154 N. W. 596; Spalti v. Oakland, 179 Iowa, 59, 161 N. W. 17; Northern Light Lodge v. Monona, 180 Iowa, 62, L.R.A.1918A, 150, 161 N. W. 78; Burroughs v. Keokuk, 165 N. W. 83.

In our opinion this has not been done.

The law relative to the construction of drains, while not identical in its provisions, is analogous in principle, and in considering this question in the case of drains, this court in the case of Alsted v. Sim, 15 N. D. 629, 638, 109 N. W. 66, said: "It is claimed that assessments were made against land not benefited by the drain. The action of the commissioners is not subject to review on the question as to what lands are benefited. On that question the action of the board is conclusive, except when acting fraudulently." Ellison v. LaMoure, 30 N. D. 43; State v. Fisk, 15 N. D. 219; Erickson v. Cass Co. 11 N. D. 494.

And where the special assessment commission and the city council have in all things proceeded in accordance with the statutory requirements, their action and decision as to what property is benefited, and the amount of benefits resulting to the different tracts from the constructions of the improvements are final, and cannot be assailed in a court, except for fraud or other grounds justifying equitable interference. State ex rel. Dorgan v. Fisk, 15 N. D. 219, 226, 107 N. W. 191; Alstad v. Sim, 15 N. D. 629, 109 N. W. 66; Rogers v. St. Paul, 23 Minn. 232; State ex rel. Cunningham v. Board of Public Works, 27 Minn. 442, 8 N. W. 161; State ex rel. Cunningham v. District Ct. 29 Minn. 65, 11 N. W. 133.

The question of necessity and reasonableness of a local improvement is, in other words, for the determination of the legislature. See 28 L.R.A.(N.S.) 1152, note.

The legislature may determine the amount of money to be raised for local improvements, or it may commit the question to properly constituted local authorities. When the legislature determines the

amount to be raised, its action is necessarily conclusive and beyond review. 25 R. C. L. 129; Spencer v. Merchant, 125 U. S. 345, 31 L. ed. 363.

In jurisdiction where the theory of benefits is rejected, the legislature is not limited in assessing the cost of a local improvement, upon the property adjacent thereto to the actual increase of the value of the property assessed, resulting from such improvement. 25 R. C. L. p. 143; Rolph v. Fargo, 7 N. D. 640, 42 L.R.A. 646, 76 N. W. 242; Webster v. Fargo, 9 N. D. 202, 56 L.R.A. 156. See also 26 L.R.A. (N.S.) 1136, note.

If assessing officers in apportioning the cost of a local improvement visit the locality of it, examine the assessed property, and ascertain the value and extent of the benefit conferred upon such property, and really make such benefit the basis of the assessment, the validity of such assessment is unaffected by the circumstance that it was worked out by the front foot rule. English v. Arizona, 214 U. S. 359, 53 L. ed. 1030; 28 L.R.A.(N.S.) 1190, note.

*Palda & Aaker,* for respondent.

There is, in fact, no authority to levy an assessment until the benefits have been first ascertained. Robertson Lumber Co. v. Grand Forks, 27 N. D. 556.

Benefits must be assessed upon the owners in proportion to the advantage which each parcel of land is deemed to acquire by the improvement. Grand Rapids School Furn. Co. v. Grand Rapids, 92 Mich. 564, 52 N. W. 1028; People ex rel. Connely v. Reis, 96 N. Y. Supp. 597; People ex rel. Tetjey v. Reis, 96 N. Y. Supp. 601.

If a district has been fixed by the legislature or by a public corporation or official authorized by statute, subordinate officials cannot omit from assessment any of the land within such district, if such omission will materially increase the assessment upon the rest of the land assessed. 1 Page & J. Taxn. by Assessment, § 554; Diggins v. Brown (Cal.) 18 Pac. 373; People v. Lynch, 51 Cal. 15, 21 Am. Rep. 677; Frazer v. Mulaney (Wis.) 109 N. W. 139; Beck v. Holland (Mont.) 74 Pac. 410.

BIRDZELL, J. This is an appeal from a judgment in an action brought to set aside certain special assessments in the city of Minot.

Judgment was entered in the court below cancelling the assessments and the defendant has appealed. A trial de novo is demanded in this court. The facts are as follows: In 1917 the board of city commissioners of the city of Minot took the necessary proceedings to construct a sanitary sewer and a water main to be paid for by a special assessment pursuant to article 20 of chapter 44 of the Political Code of North Dakota for the year 1913. These improvements were partly constructed in the alley south of block 1 of Hecker's Third Addition. The right of way of the plaintiff railroad company lies on one side of this alley which is 20 feet wide, and on the other side there are the platted lots of Hecker's Third Addition. The lots are somewhat irregular in dimensions, extending back to the Mouse river which forms their rear boundary. Owing to the meandering character of the stream, these lots, as they extend back from the alley, range in depth from 165 feet to 250 feet. The width of the right of way, as it runs parallel with the alley and the improvements, is not shown, but from the center of the main track to the alley the distance is 100 feet; so we may assume that the right of way at this point is 200 feet wide. As the railroad approaches the center of the city, its right of way widens, beginning a little way beyond the improvements in question, and where it is wider there are industrial tracks serving industries located upon the right of way. There are tracks on the right of way at the point in question and from the center of the outer track to the boundary of the right of way the distance is about 84 feet.

The special assessment commission found that this right of way property was benefited on account of the water main extension to the amount of $725, and it assessed the company $580 on account of the improvements. It found similar benefits, but different in amount, on account of the sewer construction and assessed the company $315 for this improvement. These assessments represent half the cost of the improvements. The other half is assessed against the property lying between the alley and the river.

The proceedings had with reference to the special assessment of the plaintiff's property, including the objections thereto, are shown by various exhibits which were stipulated in the evidence in the court below. The substance of the testimony offered is as follows:

The witness Nyhus was an engineer who had been employed by the

plaintiff for about seventeen years. He was familiar with the section of the right of way assessed. There is a plan to completely change the present tracks leading to the industries located on the right of way, which contemplates doing away with the sharp curvature and facilitate the switching of cars. This will necessitate the laying of additional tracks on the assessed portion, including a setout track. The carrying out of the plans has been delayed on account of the present location of the water tank which is in the midst of the proposed changes and which is to be moved under the new plan. The alley between lot 1 of Hecker's Third Addition and the right of way is a blind alley and to use the right of way for industrial purposes would require a widening of the alley. If there were four tracks on the right of way, there would not be sufficient space left to widen the alley to the ordinary width of a street. The ground is not suitable for industrial sites because it is low. There is a street crossing (Fourth avenue) immediately east of the assessed portion of the right of way, and the present plans of the railroad contemplate keeping the right of way clear for a distance of 1,000 feet in either direction from a crossing. This is a standard but impossible to attain at times. No industries have been located on the portion of the right of way adjacent to the improvements and the right of way has not been platted into blocks and lots. The first industrial site west of the Fourth Avenue crossing is located 320 feet west of the crossing. The principal industries located on the right of way are west and north of the improvement in question. In the opinion of the witness, it is not possible to locate industries on this portion of the right of way. The railroad can have no use for either the water main or the sanitary sewer for which it is assessed. There are two buildings on Hecker's Third Addition toward the east end, and west of the point where the water hydrant is located, there is a building on the right of way used as sleeping quarters for laborers, and west of this building there is a creamery, partly on the right of way, which has trackage facilities. The hydrant on the new water main is some 300 feet nearer to the nearest industry than any hydrant outside the improvement. The contemplated improvements upon the right of way have been planned for some two years and, like other plans of the railroad company, may or may not be carried out. It would be possible to widen the alley by condemning a strip along the south side of the

lots in Hecker's Addition, and it might be possible to have a serviceable street by taking 20 feet off these lots. From a railroad standpoint it is not practicable to locate industries on the space between the tracks and the alley. It is not important that a railroad have fire protection along its passing tracks and setout tracks. There are industries located close to crossings, but the crossings are protected by gates, and it is possible to protect Fourth Avenue with gates.

McGrath, agent for the defendant in Minot, testified that he had supervision of the station and station grounds; was acquainted with the policy of the company in the location of industries in the city of Minot; that, in his opinion, it was not possible or feasible to locate industries along the portion of the right of way assessed; and that in carrying out the plans of the company, it would be necessary to run one or two additional tracks on this portion of the right of way and this would not leave room for the location of industries there.

Stewart, a witness for the plaintiff, testified that he occupied a leased industrial site; was engaged in buying and selling hides; that, in his opinion, a site on the assessed portion of the right of way would not be desirable and he did not think that the defendant would be benefited by a water main and sewer. One Mair testified that he had been in the wholesale fruit business for twenty years located on the right of way of the railroad company, and that, in view of the surrounding circumstances, he did not think it feasible to locate an industry similar to theirs on that portion of the right of way in question if it was necessary to lay another passing track; that a 20-foot alley is not adequate to serve for a street; and that he could not say as to whether the water main and sewer was a benefit to the plaintiff.

Hagenstein testified as follows: He had lived in Minot for twenty-four years; is acquainted with the portion of the right of way in question; has examined it; does not consider it a good place for industries; was engaged in the railroad business for fifteen years. The sewer and water main were put in for the benefit of a creamery and at its request. He was city auditor at the time. Wilson, who was running the creamery, petitioned for the improvement and the petition has been lost. There was an extension of the water main and sewer in question running to the Hemingson creamery which was paid for by the latter.

Witness Blaisdell, called by the plaintiff, testified that he was a

member of the special assessment commission of the city of Minot. His attention being called to the special assessment being on the basis of front footage abutting the improvement, he stated "if there is a direct benefit that's what it amounts to." Where there was a sewer or water main put in, the assessment would be based upon the footage. The commissioners assumed the benefits were the same. That's what was done in this instance. The commissioners viewed the premises, took into consideration and talked over the question of benefits. They assumed that the benefits were substantially equal as to all property abutting regardless of what the property was being used for. Paid no attention to buildings or improvements. As to the railroad, it was interested in everything that pertained to the city; they could use it; there would be a possibility of using it; they could use the water system for fire protection; some of the other property assessed was not being used and the owners were in the same position as the railroad company if it did not make use of the improvements. The general system was to make the property pay for what it actually got; if the owner didn't use it, it was his lookout. They had considerable discussion at the time the assessment was made. They took into consideration not only present usage and the benefits but the future. As to the future benefits, it was a matter of speculation. The theory is that the additional possibility of water and sewer service enhances values; there is a benefit to the property; they assessed no property that did not abut the improvement.

This action was started soon after the overruling of the plaintiff's objections to the assessment by the city commission on appeal from the action of the assessment commissioners. The case is here for trial de novo. The contentions of the plaintiff are, first, that the special assessment commission acted arbitrarily, unlawfully and by an inflexible rule; that they failed to exercise any discretion and did not seek to determine the actual and reasonable benefits, if any, to accrue to the property assessed; second, that in fact no benefits accrued to the plaintiff or its property by reason of the improvements. It is submitted that the improvements in question are such that it can be said, as a matter of law, they would confer no benefit upon the railroad property in question. Third, it is contended that the assessment

is irregular and void because of the failure to create improvement districts.

We are of the opinion that a fair construction of the evidence does not warrant a finding that the special assessment commissioners exercised no discretion in their determination of the benefits to the plaintiff's property. While the result of their action was to distribute the cost of the improvements on the basis of the footage of property abutting thereon, it does not appear that this result was not reached in an honest effort to appraise the benefits equitably between various owners of property. The testimony of the witness Blaisdell, who was the only witness called by the plaintiff to testify to the manner in which the assessment was made, is, in substance, that if there was a direct benefit to the property abutting the improvement, it would be assessed on a front foot basis; that the commissioners viewed the premises and took into consideration and talked over the question of benefits; while they did not consider the character of the buildings or improvements, they did consider that there was a possibility of the railroad using the water system and they assessed other property that would have no present use for the improvements; that they considered the property should be made to pay for "what it actually got, and if the owner didn't use it (the improvement), it was his lookout;" that they took into consideration both present usage and benefits to accrue in the future, although the latter was largely a matter of speculation. In Robertson Lumber Co. v. Grand Forks, 27 N. D. 556, 147 N. W. 249, it was held that the fact that an assessment was spread uniformly over a large area is not conclusive that it was arbitrarily made or that there was no attempt to actually distribute the burden in proportion to the benefits. Practical men, acting in the capacity of special assessment commissioners, will necessarily find various properties, which are uniform in size and which are similarly situated with reference to an improvement, to be benefited in equal degree, with the result that there will be an equal assessment of benefits. So the mere fact that the burden of the cost of a public improvement is divided between various properties in proportion to the front footage is not in itself proof of an arbitrary assessment or one made regardless of benefits. See 25 R. C. L. 145.

Neither, in our opinion, is the fact that the commissioners have

51 N. D.—21.

taken into consideration, to a limited degree, future benefits proof of arbitrary action. On the contrary, we deem it evidence of an attempt to assess the benefits according to the standard contemplated by the legislature. It must be borne in mind that the unit to be benefited is the lot of parcel of land, and nothing is said in the legislation with reference to the character of improvements thereon. It must be obvious that an assessment of benefits, which would be made solely with a view to effecting an equitable distribution of the cost of a public improvement among those who have improved their property and consequently have immediate need for it, would prove most inequitable in the long run. We are clear that such was not the legislative intention. Since the legislature has made the lot or parcel of land the unit to be assessed for benefits, we are of the opinion that an intelligent assessment can not be made unless potential utility be taken into consideration in the light of the use to which such property might reasonably be expected to be put in the future. 25 R. C. L. 144. This does not mean that property can be assessed for benefits that are merely speculative or conjectural. See Lincoln v. Chicago & A. R. Co. 262 Ill. 11, 104 N. E. 277; Chicago, M. & St. P. R. Co. v. Milwaukee, 148 Wis. 39, 133 N. W. 1120; Superior v. Lake Superior Terminal & Transfer R. Co. 152 Wis. 389, 140 N. W. 26.

It is argued, however, that the improvements in question are of such character that it can be said, as a matter of law, that they confer no special benefit upon the plaintiff. Since the plaintiff holds its property merely for right of way purposes, it is urged that there can be no present benefit and that the assessment commissioners are not justified in assuming that the property might at some future time be put to some other use. Without attempting a comprehensive statement of benefits that will support an assessment against railroad right of way property for improvements of the character of those here involved, it can safely be asserted that it is not true that the advantages enjoyed by the plaintiff, through holding its right of way, are only those which result from the operation of its trains. It enjoys the added advantages of using its right of way for facilitating all its operations as well as for attracting revenue producing industries to convenient locations thereon. The sites that may be devoted to the latter purpose may be made more desirable by improvements of the character of those in

question, and revenues may be both directly and indirectly enhanced from this source. Also, the furnishing of a more adequate means of fire protection is a benefit for which the plaintiff may be assessed. In the present case, we are not prepared to say that the assessment commissioners were not justified in treating the property of the plaintiff as benefited on account of greater desirability for industrial purposes and on account of added fire protection.

But it is said this court has already decided that special assessments for sanitary sewers can not possibly benefit a railroad right of way and that, as a matter of law, it must be held that a special assessment for a sanitary sewer against a railroad company can not be supported.

In Northern P. R. Co. v. Richland County, 28 N. D. 172, L.R.A. 1915A, 129, 148 N. W. 545, Ann. Cas. 1916E, 574, this court, speaking through Mr. Justice Bruce, did say, by way of distinguishing cases: 28 N. D. 185.

"We are not unmindful of the cases as cited by counsel for appellant. In none of them, however, was there a statute similar to our own, and in which the legislative intention was clearly expressed that railroads should be subject to their operation. They were cases, indeed, in which the courts were left to infer what the legislative policy in relation to railway property might be, and this by a construction of general words merely. *So, too, most of them were cases of assessments for pavements, sidewalks, or sanitary sewers which could not possibly benefit the right of way or render the operation of the road any safer or easier.* (Citing cases.)

"A surface-water drain, indeed, which like the one in the case at bar, drains swamp lands along a right of way, is materially different from a sidewalk or pavement or a sanitary house sewer. The first may benefit the right of way by preventing its erosion. The others *can not possibly be of any advantage to it except as to add to the general health and prosperity of the localities through which the road passes.*"

Whatever distinction there might be in point of direct benefit to a railroad company between a drain and a sanitary sewer, having regard for the use of a right of way for the sole purpose of the operation of trains thereon, we think there is no distinction in fact but only in degree where the right of way is used, or reasonably may be ex-

pected to be used, for other purposes in conjunction with the operation of the railroad—for purposes in connection with which the improvements are advantageous. Insofar as the above expression might be construed as a holding that a sanitary sewer can be of no benefit to a railroad right of way such as to support a special assessment, it is overruled. We are of the opinion that, under statutes like ours, railroad right of way property may be assessed for any special benefits accruing to it by reason of the laying of water mains or the construction of sewers. Chicago & A. R. Co. v. Joliet, 153 Ill. 649, 39 N. E. 1077; Minneapolis & St. L. R. Co. v. Lindquist, 119 Iowa, 144, 93 N. W. 103; Atchison, T. & S. F. R. Co. v. Peterson, 5 Kan. App. 103, 48 Pac. 877; Lehigh Valley R. Co. v. Jersey City, 81 N. J. L. 290, 80 Atl. 228.

Are the assessments void because of the failure to create improvement districts? It was held in the case of Kvello v. Lisbon, 38 N. D. 71, 164 N. W. 305, that the failure to create an improvement district as a preliminary step is jurisdictional and that the subsequent proceedings looking toward the charging of the property with the cost of the improvement are void. In the instant case it is conceded that no improvement districts were created in anticipation of the work to be done, for which it is sought to assess the plaintiff's property. It is conceded that the only water improvement district is one which had been created by an ordinance passed some years previously and which embraced the entire city of Minot, and that the only sewer districts are districts numbered 1 and 2, both of which had been created long prior to the work in question and not in anticipation of the particular improvement. It is elementary that the matter of providing for public improvements through a special assessment is peculiarly legislative (Rolfe v. Fargo, 7 N. D. 640, 42 L.R.A. 646, 76 N. W. 242), and that the power of a city to undertake such words is one which it exercises by delegation from the legislative power of the state. At the beginning of any improvement of this character, it is essential that there shall be some legislative determination of the confines of a taxing district to be charged with the particular burden (25 R. C. L. 108), and this is especially true where the law under which the improvement is made gives to the property holders a certain voice in the matter. Section 3698, Comp. Laws, 1913, gives to the city the power to create,

among others, sewer districts, water main districts and waterworks districts. Section 3699 provides that the sewer districts shall be of such size and form as the city council, after consultation with the engineer, shall decide most practicable for the purpose of the drainage of such portion of the city as may be included in the respective districts, and § 3701 provides that the water main districts shall be of such size and number as the council, after consultation with the city engineer, shall decide most practicable. The special assessments ultimately levied (§ 3711) "constitute a fund for the payment of the *cost of the improvement for the payment of which they are levied,*" and they can not be diverted to any other purpose. The various assessments, as they are collected, are required to be put into a fund to be known by the appropriate name, such as sewer district No. —— fund, paving district No. —— fund, water main district No. —— fund, and the warrants drawn on the funds are required to state for what purpose they are issued and the fund from which they are payable. From these sections, we think it clearly appears that the legislature has required city councils to create a special assessment district covering each projected improvement. The size of the district will necessarily depend upon the character of the work contemplated. It might be so extensive that it would be necessary to place the entire city in one assessment district, as, for instance, where the contemplated improvement is that of a complete waterworks system, and where it is sought to charge the entire city, through special assessment, with the cost of a central plant or utility, such as a pumping station or a stand pipe. Or the project may be so limited that only a small outlying portion of the city would be affected, as in the case of a proposed extension of a water main or a lateral sewer. Obviously, if there be no expression by the city legislative authority of the desirability of creating an appropriate district, within which the contemplated improvement is to be placed and within the confines of which the special assessment is to be levied to defray the cost, it would be difficult if not impossible to later comply with the statutes which direct the special assessments to be placed in a fund for paying the cost of the particular improvement for which they are levied.

Complications of a still graver nature may also be expected to result. By § 3704, Comp. Laws, 1913, "the owners of a majority of

the property *liable to be specially assessed for such proposed improvement*" are given the right to protest against the improvement and in the event the owners of a majority do protest, it requires two-thirds of the council to overrule the protest and proceed with the work. Will v. Bismarck, 36 N. D. 570, 163 N. W. 550. It must be clear that if no district has been created with a view to an ultimate assessment to pay for the proposed improvement, and if such proposed improvement may be constructed under a more extensive improvement district, created without any reference to the particular proposal and in which the vast majority of property owners are neither affected nor interested, property owners, desiring to protest, will have no standard by which to determine whether they are "liable to be specially assessed" and they will not know when a majority have protested so as to require a two-thirds vote of the council to proceed. We are of the opinion that liability to an assessment, within the meaning of § 3704, means a liability according to a prima facie determination by the city council before publication of the resolution of necessity and in the ordinance creating the special assessment district. Otherwise, the statute would have to be construed to mean a liability which the property owners might infer from an inspection of plans and specifications on file, or one which might be determined by the city council after protests are filed. In our opinion, the two latter constructions are unreasonable; they are poorly adapted to secure to property owners the right of effective protest against a public improvement, which is plainly expressed in the statute.

The plaintiff further contends that the assessment is void for failure to properly describe the portion of the right of way sought to be taxed. We are of the opinion that there is no merit in this contention. In the complaint there is no allegation of insufficient notice to the plaintiff, but it is alleged affirmatively that the assessment was levied "on said block 1 in Hecker's Third Addition to said city and *on the right of way of the plaintiff lying directly opposite and across said alley from said block 1.*" If the assessment were levied by the description recited in the plaintiff's complaint, it would, in our opinion, be sufficient to identify the property sought to be assessed. See Loomis v. Chicago & N. W. R. Co. 31 S. D. 408, 141 N. W. 386.

From what has been said in this opinion, it is apparent that the

proceedings are irregular for jurisdictional reasons and that the assessments complained of are void. It follows that they must be set aside. It is further apparent that this court is of the opinion that the property of the plaintiff may be assessed on account of the improvements in question for the actual reasonable benefits accruing. Hence, the judgment appealed from cannot be affirmed unconditionally. In view of the defects in the proceedings, this court could, properly, following Kvello v. Lisbon, 38 N. D. 71, 164 N. W. 305, enjoin the collection of any assessments until such time as the requisite proceedings were taken to levy a valid assessment. However, in view of the plaintiff's proffer of an equitable tax to be determined by the court, notwithstanding the invalidity of the assessment, we deem it unnecessary to require the further proceedings to be taken preliminary to the levying of a valid assessment. The evidence in the record, however, does not, in our opinion, afford a sufficient basis for the making of an equitable assessment and, upon the remand of this case, additional evidence may be taken and findings and conclusions made on the question of benefits, unless the defendant is advised and elects to take the necessary proceedings prerequisite to the levying of a valid assessment. The order of this court is that the judgment appealed from be reversed and the cause remanded for further proceedings not inconsistent with this opinion, neither party to recover costs on this appeal.

BRONSON, Ch. J., and NUESSLE, and JOHNSON, JJ., concur.

CHRISTIANSON, J. (concurring sepcially). I concur in the principles announced in paragraphs one to four of the syllabus. I, also, concur in the principle announced in paragraph five of the syllabus in so far, and only in so far, as it provides for a determination by the court in this action of the amount which the property involved here should pay. That procedure is in harmony with, and in effect an application of, the well-settled principle that a court of equity which has obtained jurisdiction of a controversy for any purpose will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject-matter, and has been specifically authorized by the legislature.

The legislature has said: *"Whenever any action or proceeding shall be commenced and maintained before any court to prevent or restrain the collection of any special assessment or part thereof, made or levied by the officers of any city for any purpose authorized by law, . . . and such assessment shall be held to be void by reason of non-compliance with this article, the court shall determine the true and just amount which the property attempted to be so assessed by said special assessment should pay,* to make the same uniform with other special assessments for the same purpose, . . . *and judgment must be rendered and given therefor against the party liable for such special assessment, without regard to the proceedings had for the levy thereof, and such judgment shall be a lien upon the property upon which a special assessment shall have been levied, of equal force and effect as the lien of special assessments, and the lien of such special judgment shall be enforced by the court in such action. . . ."* Comp. Laws, 1913, § 3715.

In 1919 the legislature extended the scope of judicial review in cases involving special assessments, and provided: "That in all actions and proceedings involving the validity or apportionment of any special assessments for local or special improvements where the statute limits such special assessments to the special benefits accruing to the property, the courts shall review the levy and apportionment of such special assessments." Laws 1919, chap. 230.

I differ from my associates as to the construction of the evidence relating to the action of the special assessment commission in making the assessment involved here. I believe that the evidence fully justifies the findings of the trial court that the special assessment commission "in apportioning the expense of said improvements for the purpose of establishing an assessment of the cost thereof, acted arbitrarily and by an inflexible rule, and totally failed to exercise any discretion; that it did not determine or seek to determine the actual or reasonable benefits, if any there were, which were to accrue to the properties so assessed," but apportioned the assessment by the use of the front foot rule, without regard to whether the property did or did not receive any benefit commensurate with the assessment resulting from its application. But I agree that it cannot be said upon the record here that the property did not receive some benefit from the improvement. I also

agree that the evidence furnishes no basis for a determination of what assessment, if any, ought to be made against the property involved in this action.