GALLAHER et. al.   v.   CITY OF FARGO.

No. 7433.

Supreme Court of North Dakota,

May 12, 1954.

Quentin N. Burdick, Fargo, for appellants.

Wattam, Vogel, Vogel, Bright, & Peterson, Fargo, for respondent.

JOHNSON, Judge.

This is an action brought by Verner Gallaher and others similarly situated for a declaratory judgment. It involves paving improvement district No. 2901 in the City of Fargo. The complaint asks that the court declare and determine that the plaintiffs are the majority owners of the property located in said district, and that they and other protestants filed a sufficient protest to bar the defendant from proceeding further with the improvement of said paving district. The answer of the defendant denies the contention of the plaintiffs that the owners of more than half of the property liable to be specially assessed protested, and asks for a decree that the action of the defendant in the premises is in all things legal and proper and that the City Commission of the City of Fargo has the power, authority and jurisdiction to proceed with paving improvement district No. 2901. No procedural objections were raised.

Many of the essential facts involved in this action have been agreed upon by the parties. They stipulated that the Commission of the City of Fargo has complied with the provisions of Chapter 40–22 of the North Dakota Revised Code of 1943 in the creation of special improvement district No. 2901. The parties have also agreed that the *sole* issue in this action is whether or not the governing body of the City of Fargo is barred from proceeding with the paving of improvement district No. 2901 by reason of the protest petitions filed.

The principal controversy centers around the determination as to whether the Clarence Marsh, the Albert Vote and the Mabelle Reppen properties should have been

counted in determining the sufficiency and validity of the protest petitions. It also involves the determination of whether or not C. J. Illgen, Frank R. Jones, Gust Hayertz and Olai Williams should have been allowed to withdraw from the protest petitions before the same were finally acted upon by the city commission, and whether city owned property should be considered as nonprotesting property.

Mr. and Mrs. K. H. Smart have property in Block L1, Erskine's Addition, fronting on Fifth Street South. This property is held by them as joint tenants. Mrs. Smart was authorized to sign a protest by her husband. They also own property in another addition but that was not within improvement district No. 2901. Block L1 of Erskine's Addition was considered on the basis of a full block and also on the basis of a half block in an effort to determine whether a majority of the property specially liable to be assessed was involved in the protest petitions. Lots 3 to 12 in Block Mm same addition were also considered on the same basis and the east 46 feet of Lots 1 and 2 in said block.

Mabelle Reppen signed the protest petition. She was, at the time, a joint tenant with right of survivorship with Inga Bjoralt of Lot 24, Block 4, Woodruff's Addition to the City of Fargo. The deed is dated October 15, 1951. It was recorded July 23, 1952.

The resolution declaring paving necessary was passed by the City Commission of Fargo on the 3rd day of June, 1952, and published June 6th and June 13, 1952. It recites: "Protests against the proposed paving improvement must be in writing and must be filed with the City Auditor within thirty (30) days after the first publication of this Resolution." Thirty days after the first publication would terminate on the 7th day of July. The deed of Inga Bjoralt and Mabelle Reppen was not of record at the time the protest petitions were filed July 3, 1952, in the office of the city auditor, but was of record before final action on the protest petitions.

Evelyn M. Eichelberger formerly Evelyn M. Hample entered into a contract for deed dated April 26, 1947, with Albert Vote covering certain real property within the paving improvement district. The contract for deed was recorded in the office of the Register of Deeds of Cass County July the 2nd, 1952. Evelyn M. Eichelberger did not join Albert Vote in protesting the pavement project.

Clarence R. Marsh obtained a warranty deed from the Fargo-Detroit Ice Company, a corporation, dated April 20, 1951, covering real property within the pavement improvement district. This deed was recorded July the 11th, 1952, three days after time for filing of protests had expired, but before final action on the protest petitions.

The protest petitions were placed in the hands of the city engineer for checking and report to be made at a meeting to be held July 15, 1952. He reported that based on benefits the protest petitions represented 47 per cent of the affected property. The protests were presented to the city commission on July 8, 1952, five days after they had been filed. The facts disclose that on July 15, 1952, the city commission considered the protesting petitions and declared them insufficient. This constituted the final action of the governing body of the municipality contemplated by the statute on the protest petitions. The right of withdrawal from the protest petitions is no longer available after this action is taken. The city commission did at subsequent meetings consider the protest petitions but such consideration is immaterial here.

In determining the sufficiency and the validity of the protest petitions city property was included in the area involved. It is contended by the plaintiffs that, on the basis of the evidence presented owners of a majority of the property liable to be specially assessed for the improvement involved, filed sufficient and valid protest petitions and that this did bar further proceedings with reference to pavement improvement district No. 2901.

It is also contended by the defendant that the action of the board of city com-

missioners finding the protest petitions insufficient and invalid is conclusive. In view of our determination that the protest petitions were in fact insufficient and invalid and did not contain the names of the owners of "a majority of the property liable to be specially assessed for the improvement", it is unnecessary to determine that issue.

The plaintiffs and appellants have demanded a trial de novo.

█ The whole record indicates that the conclusion of the trial court that the protest petitions were insufficient and invalid is sustained by the evidence.

The determination of the legal questions presented involve the interpretation of Section 40–2218 of the North Dakota Revised Code of 1943, which reads as follows:

"If the governing body finds the *protests to contain the names of the owners of a majority of the property liable to be specially assessed* for the improvement involved, the protests shall be a bar against proceeding further with such improvement. If the protests are found to be insufficient or invalid, the governing body may cause the improvement to be made and may contract and may levy and collect assessments therefor." (Italics supplied.)

The construction of the above statute involves the meaning to be placed on the phrase, "a majority of the property liable to be specially assessed". Several methods are suggested based on front footage, benefits and square footage of the area involved in the improvement district. A clue as to the meaning of the statute is perhaps to be obtained from its legislative history. The first statute referring to the powers of a city to pave a street is contained in Chapter 73 of the Laws of Dakota, 1887. Article XV, § 15 provided as follows:

"* * * and if *a majority of the owners* of the property liable to be assessed therefor shall not within

twenty days after the expiration of such publication file with the city auditor a written protest against such improvement, then the city council shall have power to cause such improvement to be made, and to contract therefor, * * *." (Italics supplied.)

Section 143 of Chapter 62 of the Laws of 1905 was a comprehensive statute for the reorganization and government of cities, giving them power to make certain improvements. The statute was similar to the 1887 law and insofar as pertinent here is as follows:

"* * * and if a majority of the owners of property, liable to be specially assessed therefor, shall not, within thirty-five days after the first publication of such resolution, file with the city auditor a written protest against such improvement, then the city council shall have power to cause such improvement to be made * * *."

This became Section 2778 of the Revised Codes of North Dakota, 1905. If a majority of the owners protested, it appears that the city had no power to proceed. There was no provision for a hearing to determine the sufficiency of the protest petitions as is now provided by Section 40–2217, NDRC 1943. Our present statute, Section 40–2218 is a revision of Section 3, Chapter 46 of the 1907 Session Laws, which amended Section 2778 of the Revised Codes of 1905, and which was later incorporated into the Compiled Laws of 1913 as Section 3704 and reads in part as follows:

"If the owners of a majority of the property liable to be specially assessed for such proposed improvement shall not, within fifteen days after the first publication of such resolution, file with the city auditor a written protest against such improvement, then the majority of such owners shall be deemed to have consented thereto."

Section 40–2217, NDRC 1943, provides for a hearing on protest petitions to be held

by the governing body of the municipality at the next meeting after the expiration of the time for filing protests to hear and determine the sufficiency thereof. As will be noted the substantial difference in the statute was the change from "majority of the owners" to "owners of a majority of the property liable to be specially assessed".

■ Majority of the property liable to be specially assessed referred to in the statute cannot mean front footage. The statute does not refer to benefits. If the words of the statute are to be taken in their ordinary meaning, "a majority of the property liable to be specially assessed" for the improvement must constitute more than half of the area involved in the improvement district. .

The determination of what constitutes "a majority of the property liable to be specially assessed", can, it seems to us, be best accomplished on a fair and equitable basis by determining the square footage area of the whole improvement district. It would appear that the legislature must have intended that by the change in the statute. Webster's International Dictionary defines the word "majority" as "the greater of two numbers that are regarded as parts of a whole or total; the number greater than half; more than half of any total; * * *." "Majority of property" must, therefore, refer to more than half of the property. In Mills v. Hallgren, 146 Iowa 215, 124 N.W. 1077, 1079, it was held that the "majority" is meant the greater number; more than half of the whole number or a given number or group.

Determination of protest petitions on the basis of a benefit theory becomes an involved matter. The use of front footage as a basis for determining whether a majority of the property was included would seem to be inaccurate, and not in accord with the wording of the statute.

The case of McCreedy v. City of Fort Scott, 113 Kan. 753, 216 P. 287, involved a similar question. The statute involved, however, was more explicit than our statute in that it contained the following language, "and if a majority of the resident owners owning a majority in square feet of the lots or real estate liable to taxation therefor shall not * * * file * * * their protest * * * then such mayor and council" may proceed. Gen.St.1915 Kan. § 1233. While our statute is different in its wording, we believe that "owners of a majority of the property liable to be specially assessed" means essentially the same as if it had been worded as the Kansas statute involved in the McCreedy case.

The evidence discloses that on the basis of the benefit theory 47 per cent of the property of the paving district was included in the protest petitions. On the basis of square foot area, considering only the east half of Blocks Ll and Mm, Erskine's Addition, 47.79 per cent was included in the protest petitions excluding the Reppen, Vote and Marsh properties and disallowing the withdrawals of Frank R. Jones, Gust Hayertz, Clarence Illgen and Mrs. Clarence Illgen, and Olai Williams.

The square footage area of paving improvement district No. 2901 is 788,394 taking in full Blocks Ll and Mm of Erskine's Addition. The total protests on the same basis excluding the Marsh, Vote, and Reppen properties is 389,542 square feet, disallowing the withdrawals of the Jones, Hayertz, Illgen and Williams properties. On that basis the best evidence indicates that the protest petitions amounted to 49.41 per cent of the area of the improvement district involved. If only half of Blocks Ll and Mm, except as noted, is used as a basis for computation, the total square foot area of the improvement district is 737,189 square feet. The total protests on the same basis is 352,315 square feet and involves 47.79 per cent of the area. Both these calculations include all of the city owned property which was counted as nonprotesting property.

■ Was the city owned property properly counted as nonprotesting property? Section 40-2307, 1953 Supp., provides in part: "Benefited property belonging to counties, cities, villages, school districts, park districts, and townships, shall not be

exempt from such assessment, * * *." It is asserted that the assessment by the city of city property for special assessment improvements is contrary to the provisions of section 176 of the North Dakota Constitution which states: "The property of the United States and of the state, county and municipal corporations and property used exclusively for schools, religious, cemetery, charitable or other public purposes shall be exempt from taxation." In Rolph v. City of Fargo, 1898, 7 N.D. 640, 76 N.W. 242, 245, 42 L.R.A. 646, this Court held that Article XI of the Constitution covering revenue and taxation, which includes Section 176, refers to revenue measures of the State of North Dakota and not to special assessments. In that case it was said:

"That section (section 176) declares that 'laws shall be passed taxing by uniform rule all property according to its true value in money.' We cite some of the decisions which hold that such a provision embraces only general taxation: Hansen v. Hammer [15] Wash. [315], 46 P. 332; [Egyptian] Levee Co. v. Hardin, 27 Mo. 495; Emery v. [San Francisco] Gas Co., 28 Cal. 345; Wallace v. Shelton, 14 La.Ann. 498; Goodrich v. [Winchester & D.] Turnpike Co., 26 Ind. 119; Edgerton v. Mayor, etc., 19 Fla. 140; Motz v. City of Detroit, 18 Mich. 495; Hines v. City of Leavenworth, 3 Kan. 180; Daily v. Swope, 47 Miss. 367; Williams v. Cammack, 27 Miss. 209; Garrett v. City of St. Louis, 25 Mo. 505; Cain v. [Davie County] Commissioners, 86 N.C. 8; Hill v. Higdon, 5 Ohio St. 243; King v. City of Portland, 2 Or. 146; Hayden v. City of Atlanta, 70 Ga. 817; Violett's Heirs v. City of Alexandria [92] Va. [561], 23 S.E. 909 [31 L.R.A. 382]; Hilliard v. City of Asheville [118] N.C. [845], 24 S.E. 738; Dorgan v. City of Boston, 12 Allen [Mass.] 223, 237; Norfolk City v. Ellis, 26 Grat. [67 Va.] 224; Richmond & A. R. Co. v. City of Lynchburg, 81 Va. 473; City of Raleigh v. Peace [110] N.C. [32], 14 S.E. 521 [17 L.R.A. 330]. See,

also, Cooley, Tax'n, pp. 626–636; 2 Dill.Mun.Corp. § 761." Rolph v. City of Fargo, 7 N.D. 640, 652, 76 N.W. 242, 245, 42 L.R.A. 646.

This principle has been reaffirmed by this Court in many subsequent cases. See Webster v. City of Fargo, 9 N.D. 208, 82 N.W. 732, 56 L.R.A. 156; Id., 181 U.S. 394, 21 S.Ct. 623, 45 L.Ed. 912; In re Lipschitz, 14 N.D. 622, 95 N.W. 157; Wirtz v. Nestos, 51 N.D. 603, 200 N.W. 524, 533; Boynton v. Board of City Commissioners, 54 N.D. 795, 211 N.W. 441, 442; Becker County Sand & Gravel Co. v. Wosick, 62 N.D. 740, 245 N.W. 454, 461. Since public property may be specially assessed as provided by our statute, and such special assessment is not violative of section 176 of North Dakota Constitution the city property was properly counted as nonprotesting property.

"*Publicly owned property* should be considered in determining whether a remonstrance has been signed by the owners of the requisite proportion of property, if it is liable to assessment * * *." 63 C.J.S., Municipal Corporations, § 1097, p. 753.

See Palmer v. Munro, 123 Kan. 387, 255 P. 67; Clark v. City of Weatherford, 143 Okl. 165, 288 P. 278.

Frank R. Jones, Gust Hayertz, Clarence Illgen and his wife and Olai Williams withdrew their names from the protest petitions before final action was taken thereon by the city commission. The withdrawals were not accepted and the property owned by the parties was counted as protesting property. These withdrawals were in the hands of the city commission on July 15, 1952.

Frank R. Jones directed a letter dated July 14, 1952, to the city engineer in which he said, "Please be advised that I wish to withdraw, if possible, my name from the Protest Petition for the paving of Improvement District 2901. * * * I now wish to state that I am in favor of the Project contrary to my signature on the petition." Gust Hayertz stated, "I did not fully realize the nature of the document which I was

signing and now desire that my name be stricken from the list of those signing the said protest; that I am in favor of the paving and the benefits to be derived therefrom, and respectfully request the city commission to take action regarding the validity of my signature. * * *." Clarence Illgen and his wife state, "That Mrs. Illgen signed a protest to the paving in Special Improvement District No. 2901 when she was approached to do so prior to July 3, 1952; that at the time the signature of Mrs. Illgen was acquired, it was represented to her that if the paving was put in, it would require that their house be moved back and raised up, and that she signed said protest in the belief that this was a fact; that she has now been advised that no such requirement would be made regarding their house; that she therefore requests that her name be deleted from the list of those property owners signing the protest. That Mr. Illgen further states that he was never contacted with relation to the protest and would not have signed said protest. * * He further states that he is a joint owner with his wife of the above property and states that he is not in favor of the protest at the present time, and desires that this affidavit be considered by the City Commission in their meeting when the validity of the signers of the said protest is decided." Mr. Olai Williams in withdrawing said: "That prior to July 3, 1952 I was approached to sign and did sign a protest to the paving in Special Improvement District No. 2901; that at the time of entering my signature on said protest I was under the impression that the said paving did not apply to the district or street directly touching my property; that I am in favor of paving in the said District and in front of my property; that I am personally in ill health and cannot appear before the City Commission on the 15th day of July, 1952 and therefore request by this affidavit that my name be deleted from those protesting against the paving in the above designated district." Did these property owners within the improvement district have the right to withdraw their names from the protest petitions before final action thereon?

"Petitioners may be allowed to withdraw their consent or signatures at any time before the municipal authorities have acted on the petition by notice to the proper officers, and this even though the petition is thereby rendered insufficient for want of the requisite number of signers." McQuillin, Municipal Corporations, Vol. 13, 3rd ed., Sec. 37.50, p. 184.

Petitioners may withdraw their names from the petition prior to action thereon by the proper municipal authorities but not afterwards. McQueen v. City of Moscow, 28 Idaho 146, 152 P. 799, 802; Wilkinson v. City of Lincoln, 105 Neb. 752, 181 N.W. 861; Territory v. City of Roswell, 16 N.M. 340, 117 P. 846, 35 L.R.A.,N.S., 1113 and note. While the precise question involved in this case has apparently not been passed upon in this state, this Court has heretofore had occasion to pass upon questions much like that now presented for solution. See Sim v. Rosholt, 16 N.D. 77, 112 N.W. 50, 11 L.R.A.,N.S., 372; Rosten v. Board of Education, 43 N.D. 46, 173 N.W. 461; State ex rel. Knox v. Stevens, 48 N.D. 47, 183 N.W. 109; Coghlan v. Cuskelly, 62 N. D. 275, 244 N.W. 39, 41. See, also, in this connection Uhl v. Collins, 217 Cal. 1, 17 P. 2d 99, 85 A.L.R. 1370, and note. See, also, Chester v. Einarson, 76 N.D. 205, 34 N.W. 2d 418, 35 N.W.2d 137. In the case of Territory ex rel. Stockard v. City of Roswell, supra, the Court said:

"We think the petitioners had the right to withdraw, at least up to the time when the mayor and council acted on the report of the committee. * * Some of the cases which are most analogous to the one at bar, and which we think best sustain the view we adopt, are: People ex rel. Irwin v. Sawyer, 52 N.Y. 296; Dutten v. [Village of] Hanover, 42 Ohio St. 215; LaLonde v. [Board of Sup'rs of] Barron County, 80 Wis. 380, 49 N.W. 960; Davis v. Henderson, 127 Ky. 13, 104 S.W. 1009; Littell v. [Board of Sup'rs of] Vermilion County, 198 Ill. 205, 65 N.E. 78.

"In the last-named case, the court said: 'Each petitioner acts upon his own responsibility, and if he should change his mind on the question whether a new township would better serve the convenience of the inhabitants residing therein, or if he should be induced to sign it under a misapprehension or through undue influence, he ought to have the right to correct his mistake, if he does so before the rights of others have attached by the final action on the part of the board. * * '" 16 N.M. 340, 117 P. 848, 35 L.R.A., N.S., at page 1119.

The case of Hoffman v. Nelson, 1 Neb., Unoff., 215, 95 N.W. 347, 349, discusses the question of the right of withdrawal before final action by the governing officials is taken. It states:

"We do not feel justified, in a purely statutory matter, such as this, in placing any restriction upon the free action of a citizen which the law has not placed there, and which no consideration of good morals or even propriety seems to require. We do not discover anything improper in a citizen, who thinks he is now better advised, changing his mind a second time as to the expediency of having such an election." 1 Neb., Unoff., at page 221, 95 N.W. at page 349.

This reasoning appeals to us. Here four parties indicated their wish to withdraw on the basis of change of mind, misapprehension or misunderstanding. The filing of protest petitions does not automatically constitute a bar to the establishment of the improvement district. The protest petitions are to be heard at the next regular meeting of the governing body after the expiration of the time for filing the same. It shall then determine the sufficiency of the protest petitions. Under the authority of the statute the right of the governing body to proceed with the improvement must be based on the insufficiency or invalidity of the protest petitions. NDRC 1943, 40–2218. See 63 C.J.S., Municipal Corporations, § 1366, p. 1121. After the hearing and determination

of the sufficiency or insufficiency of the protesting petitions there is no right of withdrawal. It is only if the governing body finds the protest to contain the names of a majority of the property liable to be specially assessed for the improvement involved, that the protest shall be a bar against proceeding further with such improvement. This necessarily is not determined until the meeting of the governing body held for the purpose of checking the sufficiency of the protest petitions. See, also, State ex rel. Andrews v. Boyden, 1906, 21 S.D. 6, 108 N.W. 897, 15 Ann.Cas. 1122. For an extensive consideration of the right of signers of petition or remonstrance to withdraw therefrom or reject withdrawal see 126 A.L.R. 1032.

We have no statute dealing with a right of withdrawal but it seems that since property owners have the right to protest the establishment of an improvement district and a hearing is provided they should have the correlative right of withdrawing from the protest petitions if that withdrawal comes before final action is taken thereon. The withdrawals involved here were submitted before final action by the city commission. The withdrawals were effective, and the property owned by the withdrawing parties should have been considered as nonprotesting property. The Hayertz property comprised 5,000 square feet; the Williams, 10,600 square feet; the Jones, 9,300.01 square feet; and the Illgen, 5,720 square feet. The withdrawal of these parties from the protesting petitions would further augment the majority of the nonprotesting property and reduce the percentage of the protesting property.

The Smart property consisting of Lots 10, 11 and 12, Block Ll, Erskine's Addition was considered on the basis of 75 feet by 93.1 feet instead of 75 feet by 186.2 feet. The reason assigned for considering it on that basis was the fact that the west side of Blocks Ll and Mm will not be assessed for benefits. The west side of these blocks had already been assessed for street improvements involved in another improvement district. The west half of these two blocks

was property that was not especially benefited. It is the duty of the special assessment commission to personally inspect any and all lots and parcels of land which may be subject to special assessments and to determine from such inspection the particular lots and parcels of land which, in the opinion of the commission, will be especially benefited by the construction of the work for which the assessment is to be made. The statute also imposes upon the assessment commission the duty to determine the amount in which each of the lots and parcels of land will be especially benefited by the construction of the work for which the special assessment is to be made and shall assess each of such lots or parcels of land such sum, not exceeding the benefits, as shall be necessary to pay its just proportion of the total cost of such work. Section 40–2307, 1953 Supp.

Sections 40–2307, 1953 Supp., and 40–2218, NDRC 1943, are in harmony. The latter section refers to, "the owners of property liable to be specially assessed" which is the property that will be especially benefited. McKenzie v. City of Mandan, 27 N.D. 546, 147 N.W. 808; Minneapolis, St. P. & S. S. M. R. Co. v. City of Minot, 51 N.D. 313, 199 N.W. 875, 37 A.L.R. 211. It is, therefore, within the reasonable discretion of the governing body to consider only the east half of Blocks Ll and Mm, Erskine's Addition, since that property in these blocks of Erskine's Addition is the only property especially benefited. It is the governing body of the municipality that ultimately confirms the assessment list. NDRC 1943, 40–2316.

The case of Reed v. City of Langdon, 78 N.D. 991, 54 N.W.2d 148, holds that the assessment of property within a water and sewer improvement district is discretionary with the special assessment commission and that such decision was final in absence of appeal therefrom. NDRC 1943, 40–2314. At page 151 of 54 N.W.2d the court with reference to determination of boundaries said:

"Generally speaking, a city council or commission is the sole judge of the necessity of sewers and water mains, and its determination as to the boundaries of the district and the property included therein is generally conclusive. Limitations on this rule are recognized, however, where fraud, bad faith, arbitrary action, or abuse of discretion are evident, in either of which the courts may review such determinations. 63 C.J.S., Municipal Corporations, § 1367, p. 1122; 44 C. J., Municipal Corporations, § 2971, p. 574; Robertson Lumber Co. v. City of Grand Forks, 27 N.D. 556, 147 N.W. 249."

In Robertson Lumber Co. v. City of Grand Forks, cited above, it was said:

"Neither before the commission nor before the city council did the petitioner make any point as to the invalidity of the ordinances, or any of them, or as to the fact of their indefiniteness in regard to the boundaries of the district, or as to the manner of the passage of the ordinance in question, nor that its property was not included in each and all of the ordinances." 147 N.W. at page 254.

In the case at bar there is no showing of fraud, bad faith, or arbitrary action on the part of the city commission. The Smart property comprised an area of 13,951 square feet, if the full length of the lots is used, and we do not believe that the determination of the boundaries of the district on the basis of the east half of Blocks Ll and Mm, except as noted, Erskine's Addition, since that is the property specially assessed, would constitute arbitrary action or abuse of discretion by the city commission. In fact, it would be beneficial not only to Mr. and Mrs. Smart but other owners in these two blocks to consider only the east half as the amount of the benefits would necessarily be less.

In discussing whether or not the city has the power to consider only the east half of Blocks Ll and Mm as being especially benefited the trial court made the following statement: "If the city has such powers, then there is no question but what the

protestants are in the minority. And even giving the protestants the benefit of the protesting petitioners that were disallowed, the protestant's petition would not be sufficient." We believe it was discretionary with the commission to consider the east half of Blocks Ll and Mm as being especially benefited. The determination of the boundaries of the district to be specially assessed is within the discretion of the city commission.

The next question involves the Reppen, Marsh and Vote properties. Assuming without deciding that the word "owners" as used in Section 40-2218, NDRC 1943, did include these properties, and that the protests of these parties should have been allowed, the disallowance thereof would not change the result in this case. The Reppen property involved 7,500 square feet; the Marsh property, 7,000 square feet; and the Vote property, 5,500 square feet; or a total of 20,000 square feet. The rejection of the protests of these properties is more than offset by the withdrawals of the Jones, Hayertz, Illgen and Williams properties which amounts to 30,062.01 square feet and which should have been considered as non-protesting property.

Close scrutiny of the entire record fails to establish that the owners of a majority of the property liable to be specially assessed for the improvement were involved in the protest petitions, and the city commission and the trial court properly found them insufficient and invalid. The plaintiffs have failed to sustain the burden of proof. It was incumbent upon them to do so since the trial of the sufficiency of the protests became the sole issue in the case at bar. Jones v. City of Hankinson, 48 N. D. 618, 186 N.W. 276.

The judgment of the district court is affirmed.

MORRIS, C. J., and GRIMSON, BURKE and SATHRE, JJ., concur.