Hynek **RYBNICEK**, Phil A. Hertz, Ella L. Kruger, Mike Flink, Etola Young, Olga Toman, Service Motor Sales Company, a North Dakota Corporation, J. A. Froelich, F. W. Haider, Plaintiffs and Appellants,

v.

CITY OF MANDAN, a Municipal Corporation, Arnold T. Livdahl, as City Auditor of the City of Mandan, and Albert E. Lubke, as City Treasurer of the City of Mandan, Defendants and Respondents.

No. 7764.

Supreme Court of North Dakota.

Sept. 29, 1958.

Former Opinion Adhered to On Rehearing Dec. 31, 1958.

Lord, Ulmer, Bair & Daner, Mandan, for appellants.

Richard P. Gallagher, Mandan, C. F. Kelsch, Mandan, for respondents.

SATHRE, Judge.

The plaintiffs, residents and property owners of the City of Mandan, North Dakota, brought this action against the City of Mandan, Arnold T. Livdahl, City Auditor, Albert E. Lubke, City Treasurer, to permanently enjoin the board of commissioners of the City of Mandan from levying and collecting special assessments for certain improvements in Paving Curb and Gutter District No. 29 in the City of Mandan; and to permanently enjoin the installation, construction, alteration and extension of a special street lighting system upon certain streets and highways, avenues and public places within the city of Mandan. The complaint further alleges that all of the proceedings had by the City of Mandan in the establishment of said Paving Curb and Gutter District No. 29 and in establishing the special street lighting system were illegal, contrary to law, and in all things void and a permanent injunction is prayed for enjoining the board of commissioners of the City of Mandan from levying and collecting a special assessment for such improvements and from issuance of special improvement warrants to defray the cost and expense of such improvements.

The defendants answered admitting the establishment of said Improvement District No. 29 and the special street lighting system; but denying specifically that the proceedings had in establishing the said improvement districts were void or contrary to law, and specifically alleged that all of said proceedings were had in strict conformity with the statutes in such case made and provided and that all of said proceedings were in all things regular and proper.

The case was tried in the district court of Morton County, Sixth Judicial District, North Dakota, on the 8th day of August 1957 before the Hon. H. E. Rittgers, District Judge, without a jury. The district court found that all of the proceedings had by the City of Mandan in the establishment of Improvement District No. 29, and the special street lighting system were in all things regular and in conformity with law, and judgment was entered accordingly.

From this judgment the plaintiffs appealed and demanded a trial de novo.

It is the contention of the plaintiffs, appellants, that the proceedings had by the City Commission of Mandan in creating Improvement District No. 29, and the Special Street Lighting System were illegal and void for the reason that improvements of different types and character were embraced in the said improvement districts contrary to Sections 40–2208 and 40–2209 Supp., NDRC 1957, and that the Commission made an erroneous computation of the number of protests by the owners of the property in the districts.

The defendants contend, however, that the proceedings had were in all things regular and in compliance with all statutory requirements.

The issues thus presented on this appeal are whether Improvement District No. 29, and the Special Street Lighting System, were created in accordance with statutory requirements.

The appellants having demanded a trial de novo, it will be necessary to review the evidence and entire record as provided by Section 28–2732, NDRC 1943.

There is no material dispute as to the facts in the case. The proceedings of the City Commission of Mandan in creating Improvement District No. 29, and the special street lighting system were had at regular or special meetings held June 3rd, June 15th, June 17th, July 15th, July 20th, and July 22nd, 1957. Resolutions were adopted and passed declaring the necessity for and creating Improvement District No. 29, and the special street lighting system. Notices were published relating to protests; plans and specifications for the improvements were approved; advertisements for bids were published, and contracts were let in accordance with the plans and specifications prepared by the city engineer.

We shall first consider the question as to the validity of the proceedings of the City Commission in creating Improvement District No. 29.

It is established by the evidence and the exhibits in the record that two separate and distinct improvements are proposed for separate streets in District No. 29. In Indian Street, Chief Street, Brace Avenue and part of Seventh Street the improvements to be made, according to the plans and specifications, are curb, gutter and gravel base. The improvements to be made in the other streets and areas of the district consist of paving only but of different widths in different streets.

The plaintiffs contend that under Sections 40–2208 and 40–2209, 1957 Supp., NDRC 1943, the several purposes for improvements embraced in an improvement district must be the same in and common to all streets and areas in the district; that District No. 29 embraces different purposes for improvement in separate streets contrary to the provisions of Sections 40–2208 and 40–2209.

The Legislative Session of 1949 enacted Chapter 267 relating to the powers of municipalities in making improvements and to defray the expense thereof by special assessments. Chapter 267 amended Sections 40–2201, 40–2208 and 40–2209. Section 40–2201 specifies the various types of improvement which may be made by municipalities and paid for by special assessments. Sections 40–2208 and 40–2209 are as follows:

Section 40–2208.

"For the purpose of making improvements specified in this chapter and defraying the cost thereof by special assessments, a municipality shall create sewer districts, flood protection districts, paving districts, watermain districts, waterworks districts, parking lot districts, or districts for the purpose * * * of constructing gutters, or for the purpose of planting trees, constructing grass plots, or sowing grass seed or for any two or more of such purposes, and may extend any such districts when necessary. Any municipality which shall finance the making of any of the improvements specified in this chapter through special assessments shall create the appropriate special improvement district or districts by ordinance or resolution. The district shall be designated by the name of the improvement for the making of which it is created, and districts created for the same kind of improve-

ment shall be numbered consecutively."

Section 40–2209.

"Improvement districts created by a municipality may embrace two or more separate property areas, each or all of which may be of the following size and form:

"1. A sewer district or flood protection district shall be of such size and form as the governing body, after consultation with the engineer for the municipality or with another competent engineer, shall decide is most practicable for the drainage of the portion or portions of the municipality included in the district as established by the governing body;

"2. A paving district shall be of such size and form as the governing body, after consultation with the engineer for the municipality or with another competent engineer, shall decide is to be benefited by the construction or reconstruction of paving therein;

"3. Watermain districts, waterworks districts, and districts for the purpose of grading, graveling, curbing, planting trees, constructing grass plots, sowing grass seed, and constructing gutters shall be of such size and number as the governing body shall decide most practicable after consultation with the engineer for the municipality or other competent engineer; and

"4. Parking lot districts shall be of such size and form as the governing body of the municipality shall decide, including such property as in the opinion of such governing body, is specially benefited thereby."

Section 40–2208 authorizes municipalities to create improvement districts for any one of the several purposes speci-

fied therein, "or for any two or more of such purposes", but these purposes are all of different types and character. Section 40–2209 authorizes municipalities to include separate areas in the improvement district. The question thus presented is whether it was the intent of the legislature, in authorizing inclusion of two or more purposes, that improvements of different types and character might be made in separate streets or areas in one and the same improvement district. The language of the statutes quoted is ambiguous in that there is no direct expression of legislative intent relative to the question raised; it will therefore be necessary to construe the language of the statutes in order to ascertain the legislative intent. The general rule for construction of an ambiguous statute is stated as follows in 82 C.J.S. Statutes § 322, pages 588, 589 and 590:

"The duty devolves on the court to ascertain the true meaning where the language of a statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, since an ambiguity calling for construction may arise when the consequence of a literal interpretation of the language is an unjust, absurd, unreasonable, or mischievous result, or one at variance with the policy of the legislation as a whole; and the real meaning of the statute is to be ascertained and declared, even though it seems to conflict with the words of the statute. It is only when the terms of a statute, which do not accord with the general intent, are plainly expressed that they will prevail.

"If the intention of the legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction, consistent with the general principles of law. Only where a statute is so vague that it is impossible to resolve the doubts therein will the court refuse to enforce it."

And in Am.Jur. Statutes, Section 229, page 216, it is stated:

"Notwithstanding the general rule against the enlargement or extension of a statute by construction, the meaning of a statute may be extended beyond the precise words used in the law, and words or phrases may be enlarged, where that is necessary to obviate repugnancy and inconsistency, and give effect to the manifest intention of the legislature, as discovered by the application of sound principles of interpretation, and to carry out the general scope and purpose of the act."

■ Section 40–2208 enumerates the several purposes for which improvement district may be created and it further provides: "or for any two or more of such purposes". If, as contended by defendants, improvements of different types and character may be made in separate areas or streets of one and the same improvement district, the streets adjoining one block may be graveled, curb and gutter may be constructed in the next block, and paving in the street in a third block. We do not believe that such was the intent of the legislature.

Section 40–2208 provides that one or more purposes may be embraced in an improvement district. It is reasonable to assume therefore that it was the intent of the legislature in enacting the statute that all purposes embraced should be common to all streets and areas of the district. That such was the legislative intent is implied by Sections 40–2217 and 40–2218, NDRC 1943, relating to protests against the creation of improvement districts.

Section 40–2208 authorizes municipalities to create improvement districts for any one of the purposes specified therein, "or for any two or more of such purposes."

Sections 40–2217 and 40–2218 grant the right of protest to property owners in the proposed improvement district. Section 40–2217 provides:

"If, within thirty days after the first publication of the resolution declaring an improvement to be necessary, the owners of property liable to be specially assessed for the proposed improvement file written protests with the city auditor * * * protesting against the improvement, the governing body of the municipality, at its next meeting after the expiration of the time for filing such protests, shall hear and determine the sufficiency thereof."

Section 40–2218 provides:

"If the governing body finds the protests to contain the names of the owners of a majority of the property liable to be specially assessed for the improvement involved, the protests shall be a bar against proceeding further with such improvement."

It will be noted that Section 40–2217, NDRC 1943, gives owners of property liable to be assessed the right to protest against the *improvement* proposed, and Section 40–2218 makes protest necessary by owners of a majority of the property liable to be assessed for the *improvement* in order to "be a bar against proceeding further with such *improvement*." (Emphasis supplied.)

■ We think the reasonable inference to be drawn from the language of Section 40–2208 is that where the improvement is made for two or more of the purposes specified, such purpose must be common to all the areas embraced in the district in order to maintain its singleness and unity. It seems clear that where an improvement district embraces two or more of the purposes specified in Section 40–2208, NDRC 1943, the term "improvement" as used therein and in Sections 40–2218 and 40–2217, supra, is not limited to one purpose but includes all of the purposes for which the improvement district is created. It must follow therefore that the purposes embraced in the im-

provement district must be common to all of the areas embraced in the district.

It is established by the record in the instant case that Improvement District No. 29 of the City of Mandan embraced purposes of different types and character in separate streets and areas of the district contrary to the provisions of Sections 40–2208 and 40–2209, NDRC 1943 as amended. We conclude therefore that the proceedings had by the City Commission of the City of Mandan for creation of Improvement District No. 29 are irregular and without legal effect.

We now come to a consideration of whether the Special Street Lighting System of 1957 was legally created. The proceedings had by the City Commission in establishing the Street Lighting System have been set out in their order elsewhere in this opinion and it is not necessary to restate them here.

Chapter 40–30, NDRC 1943, empowers cities in this state to install special street lighting systems and pay therefor by special assessments:

Section 40–3001 provides:

"Any city may install upon any of its streets any special system or systems of street lighting and defray the expenses and cost thereof as provided in this chapter."

Section 40–3002 prescribes the procedure for establishing a special system or special systems of street lighting and is as follows:

"Whenever the governing body of any city shall deem it necessary to install, construct, alter, or extend, upon any of the streets of the city, a special system or special systems of street lighting, such governing body may direct the city engineer or such other person as shall be designated, by motion or resolution, to prepare plans and specifications for such work and to make an estimate of the probable cost. Such plans, specifications, and estimates shall be approved by resolution of the governing body and filed in the office of the city auditor. The city auditor thereupon shall publish in the official newspaper of the city once each week for three successive weeks a notice stating that such plans, specifications, and estimates have been approved and filed in his office and are open to public inspection. If the owners of a majority of the property abutting on any street or streets where such lighting system is to be installed shall not protest against the lighting system or improvement within ten days after the last publication of such notice, the majority of such owners shall be deemed to have consented thereto, and the city may proceed to provide for the construction of the improvement and to assess the cost thereof, or such part thereof as the governing body shall deem proper, against the abutting property in the manner and with the notice and according to the forms and procedure provided in this title for the construction and assessment of street paving."

The City Commission by resolution as provided by said Section 40–3002 directed the city engineer to prepare plans and specifications for the Special Street Lighting System. Plans and specifications were prepared by the engineer and approved by the Commission. Notice was published as provided by the statute that the plans and specifications were on file in the city auditor's office. The Commission found that the owners of a majority of the property abutting the Street Lighting System had not protested. Thereafter the Commission advertised for bids and authorized and let contracts for installation of the Lighting System.

The plaintiffs argue that the resolution of necessity for installing the special lighting system adopted by the city commission was adopted contrary to law, and that

it provided for distinct and separate improvements in distinct and separate areas of the system; that expensive metal poles would be used in the commercial districts, while wood poles would be used in the residential districts of the system. We fail to see any merit to the claim thus made. The purpose of installing the lighting system was to provide lights for the streets, avenues, and abutting property in the system. The lighting system is a single project for a single purpose,—that of providing light for the areas included therein. The same type of cable, luminaries fittings and controls are used in all the areas in the system. The system is planned and prepared as a single unit and the fact that certain items or parts used in its construction may be of different material does not destroy the singleness and unity of the system.

It is next contended by the plaintiffs that the special lighting system includes streets that did not exist at the time the resolution of necessity for installing the system was adopted by the City Commission. The streets referred to are Brave Street, Indian Street, Chief Street and Plaza Place. The evidence shows that on June 3, 1957, the Board of Education of the City of Mandan, executed to the City of Mandan an easement for highway purposes in certain lands described in the easement, and the same was received and accepted on the same day by the City Commissioners of Mandan. The property described in the easement was platted by the city engineer, presented to the City Commission and was on file with the city auditor on June 17, 1957, when the Commission adopted the resolution of necessity for installing the Special Street Lighting System, and the streets referred to were referred to by name and included in the resolution. The objection of plaintiffs to the inclusion of the streets referred to in the Special Lighting System is therefore without merit.

The plaintiffs next argue that defendants did not comply with the statute in determining and computing the protests of property owners in the lighting system. It appears from the evidence that some of the property owners in the Special Lighting System filed written protests against the installation. The City Commission referred the protests to the city engineer, city auditor and city attorney with directions to ascertain the accuracy and sufficiency thereof and to report the same to the Commission.

The city engineer, city auditor and city attorney examined the properties abutting the Special Lighting System and made a report of their findings to the City Commission. The report showed the square footage of all lots and parcels abutting the Special Lighting System, and that the total area subject to assessment was 922,915 square feet; that the owners of 309,500 square feet or .335 percent of the total area had protested the installation of said lighting system, and that owners of 613,415 or .665 percent had not protested. The Commission, after examination of the report, approved the same as the findings of the Commission, held the protests insufficient, and by resolution authorized and let contracts for installation of the Special Lighting System.

■ It is the contention of the plaintiffs that it was the duty of the City Commission to ascertain and determine the sufficiency of the protests made by property owners, and that it was a wrongful delegation of its powers to refer the matter to the city engineer, city auditor and city attorney. We believe such contention is without merit. It was not necessary for the individual members of the Commission personally to examine the amount of property included in the district, or the number of property owners who had protested or who had not protested. Those matters were questions of fact which certainly could be ascertained by other city officers and reported to the Commission, and that is what the city engineer, the city auditor and city attorney did. The Commission examined the report thus made and approved it as its own findings. This we think was a legitimate procedure on the part of the Commission and cannot

be held to be a wrongful delegation of power.

Plaintiffs further contend that the Special Lighting System includes a portion of U. S. Highway No. 10, that the same does not correspond with Main Street in the City of Mandan; that the State of North Dakota purchased the same from the City of Mandan and from individual owners and that the property should not be included as not protesting.

But even if it is held that such property should not be included as not protesting, defendants' exhibit 7, shows that the total area of West Main, U. S. Highway No. 10, is 158,975 square feet. Deducting same from the total square footage of 922,915 claimed to be subject to assessment there still remains 763,940 square feet subject to assessment. The owners of 309,500 square feet protested. That would still leave owners of 454,440 square feet as not protesting, or a majority of 144,940 square feet.

The plaintiffs argue further that the Commission erroneously determined the amount of property liable to assessment in that it computed the square footage on lots of 50 feet width in some blocks and on lots of 25 feet width in other blocks. As we read the testimony and the exhibits the amount of property was computed on a square footage basis,—that is on the width and depth of each lot abutting the Lighting System. We think this was the correct method or formula for determining the amount of property included in the System. In the case of Gallaher v. City of Fargo, N.D., 64 N.W.2d 444, at page 448, this Court said:

"The determination of what constitutes 'a majority of the property liable to be specially assessed', can, it seems to us, be best accomplished on a fair and equitable basis by determining the square footage area of the whole improvement district. It would appear that the legislature must have intended that by the change in the statute. Webster's International Dictionary defines the word 'majority' as 'the greater of two numbers that are regarded as parts of a whole or total; the number greater than half; more than half of any total; * * *.' 'Majority of property' must, therefore, refer to more than half of the property."

Plaintiffs finally argue that the protests in any single street in the lighting system is a bar to the improvement in that street under Section 40–3002, NDRC 1943, which provides:

"If the owners of a majority * * * on any street or streets where such lighting system is to be installed shall not protest against the lighting system or improvement, * * * the majority of such owners shall be deemed to have consented thereto, and the city may proceed to provide for the construction of the improvement * * *".

The language quoted is not clear as to whether protest by the owners of a majority of property abutting one street of the system would bar the installation in that particular street, or whether it would bar the installation of the whole system.

The purpose of the statute is to authorize municipalities to install special lighting systems. A lighting system may embrace one or more streets; but whether it embraces one or more streets, it is a single unit. We do not believe the language of the statute warrants the construction that owners of a majority of the property abutting one street would bar the installation of the entire system. We hold therefore that the most reasonable construction of the language of the statute is that protest by owners of a majority of the property embraced in the system liable to assessment is necessary to bar installation. Since a majority did not protest we are agreed that the proceedings had by the City Commission of Mandan for installation of the Special Street Lighting System were regular and valid and in substantial compliance with statutory requirements.

After a careful consideration of the voluminous record we conclude that the part of the judgment of the district court sustaining the validity of the creation of Improvement District No. 29 must be reversed, and that the part sustaining the validity of the Special Street Lighting System is affirmed.

The case is remanded with directions to enter judgment in accordance with this opinion.

GRIMSON, C. J., and JOHNSON, BURKE, and MORRIS, JJ., concur.

On Rehearing

SATHRE, Judge.

On petition by the defendants-respondents a rehearing in this case was granted and argument by both parties to the action was heard.

After due consideration we adhere to our former opinion.

GRIMSON, C. J., and BURKE and MORRIS, JJ., concur.